105 N.J. Super. 493 (1969)
253 A.2d 193
STATE OF NEW JERSEY,
v.
EVERETT LeROI JONES, DEFENDANT.
Superior Court of New Jersey, Essex County Court, Law Division  Criminal.
Decided April 21, 1969.
*496 Mr. Martin G. Holleran, Assistant Prosecutor, for the State (Mr. Joseph P. Lordi, Essex County Prosecutor).
Mr. Raymond A. Brown and Mr. Irvin B. Booker, attorneys for defendant.
MILMED, J.C.C. (orally).
Defendant, along with Charles McCray and Barry Wynn, was tried and convicted in the Essex County Court for unlawful possession of weapons (N.J.S. 2A:151-41). On appeal to the Appellate Division of the Superior Court, these convictions were reversed. A new trial in the matter is pending. State v. Jones, 104 N.J. Super. 57 (App. Div. 1968).
On November 6, 1967, upon the jury's retiring from the courtroom after rendering its verdict in that case, the trial judge adjudged defendant Everett LeRoi Jones guilty of *497 "criminal contempt" and sentenced him to a term of 30 days in the Essex County Penitentiary. The certificate of the trial judge in the matter charges contempt in two respects: (1) that on October 17, 1967, in the course of a motion to suppress evidence, the defendant "did utter in an audible and disrespectful manner his disapproval of * * * [a] ruling by the Court by an epithet descriptive of excrement * * *"; and (2) that on October 24, 1967, during the trial of the case against defendant and his two co-defendants the following occurred:
"MR. BOOKER: Your Honor, regarding a request by Mr. Jones out of my presence while I was in the County Clerk's Office, I was led to believe the request was made to address the Court and it was indicated to Mr. Jones that he would have the opportunity to speak to the Court out of the presence of the jury when I returned.
THE COURT: No. I said he could speak through you.
MR. BOOKER: I am prepared now to address the Court then on behalf of Mr. Jones.
THE COURT: I will hear you at side bar.
DEFENDANT JONES: Why can't I make a statement?
THE COURT: Mr. Jones, I told you that you have an attorney and he may speak for you.
DEFENDANT JONES: This is something I want to say.
THE COURT: Just a minute. You are in a Court of justice and 
DEFENDANT JONES: This isn't a Court of justice.
THE COURT: Just a minute, sir.
DEFENDANT JONES: You're disqualified to conduct this case. I read your decision last night. You quoted this man and you quoted that. I'll not be judged by a hundred white people in this Court. They are not my peers. They are my oppressors.
I'll not be held by you or anybody like you.
THE COURT: Hold him there. Retain him.
DEFENDANT JONES: I'm going out of here.
THE COURT: You take him into custody.
DEFENDANT JONES: Take me into custody for what? Because I won't be judged by this kangeroo court?
What are you pushing me for?"
On appeal to the Appellate Division, this conviction for contempt and the sentence were set aside and the case remanded to the trial court for further proceedings consistent with the Opinion of the Appellate Division, which held that *498 (1) "if the defendant did do and say what he was charged with doing and saying, it constituted contempt"; (2) defendant "should have been advised of the contempt charge and been given an opportunity to be heard before the judge found him guilty and sentenced him," and (3) defendant "and his attorney should have been given the opportunity to deny the charges, or to advance any arguments they wished to make in explanation or mitigation of the offenses, and as to the punishment."
The trial judge having disqualified himself following the remand, the case was assigned to this court for hearing and disposition.
As pointed out by Chief Justice Weintraub in his opinion for our Supreme Court in In re Buehrer, 50 N.J. 501 (1967).
"* * * (1) a contempt, in the court's discretion, may be prosecuted summarily, i.e., without indictment and without trial by jury as provided in R.R. 4:87-1 to 4, or as a crime under N.J.S.A. 2A:85-1; (2) in a summary prosecution for contempt the punishment may not exceed six months' imprisonment or a fine of $1,000 or both, subject to the provisions for probation in N.J.S.A. 2A: 168-1 et seq.; and (3) a summary conviction for contempt does not constitute a conviction within the meaning of statutes imposing disability or disqualification or otherwise discrediting an individual because of a prior conviction for `crime.'" (at p. 522)
In such a summary prosecution the "presumption of innocence * * * obtains, and the burden of the prosecution is to prove guilt beyond a reasonable doubt. Thus the defendant is afforded all the rights of one charged with crime except the right to indictment and to trial by jury." Ibid., at p. 516. See also New Jersey Dept. of Health v. Roselle, 34 N.J. 331, 338-339 (1961). He cannot be compelled to testify against himself and his "guilt must be proved by judicial evidence, i.e., by testimony to which the ordinary rules of evidence are applied * * *" Staley v. South Jersey Realty Co., 83 N.J. Eq. 300, 307 (E. & A. 1914). And see In re Verdon, 91 N.J.L. 491, 496 (Sup. Ct. 1918). One *499 of the substantial rights of the accused "is that the incriminating testimony shall be given by witnesses subject to cross-examination and impeachment under the ordinary rules of evidence." Dorrian v. Davis, 105 N.J. Eq. 147, 151 (Ch. 1929).
In light of the disqualification of the trial judge, his certificate constitutes the pleading which defendant is called upon to answer. See In re McIntosh, McIntosh v. United States, 73 F.2d 908, 910 (9 Cir. 1934). This he did by a plea of not guilty to the charges.
Appearing on behalf of the State in this prosecution were court officers, Kuta, Flynn, and Collan, Assistant Prosecutor Zazzali and the trial judge, each of whom testified that they heard defendant in court, on October 17, 1967, during the hearing of the motion to suppress, utter the word descriptive of excrement. The State does not contend that the utterance of the word in any way disrupted or obstructed the pretrial proceeding then in progress, and the evidence submitted on behalf of the State shows that that proceeding continued uninterrupted and without incident immediately following the utterance. The prosecution witnesses also testified regarding the October 24, 1967 incident cited in the certificate of the trial judge. That incident took place at the Morris County Courthouse during the trial of defendant and his two co-defendants on a charge of unlawful possession of weapons, a change of venue from Essex to Morris County having been granted. Each of the witnesses who appeared on behalf of the prosecution testified to defendant's attempt to leave the courtroom and to his reference to a "kangaroo court." The trial judge testified that at the time in question defendant attempted to make a statement to the court; that he informed defendant that he would have to speak through his attorney, and that he made the statements above quoted, attributed to him in the certificate citing him for contempt.
Defendant testified in his own behalf. He denies that he uttered the word descriptive of excrement as charged; he *500 says that at the courthouse in Morristown on October 24, 1967, when he said "Why can't I make a statement?" and "This isn't a Court of justice," he was addressing his counsel, Booker; that when he told the trial judge that he was disqualified to conduct the case, he had reference to the judge's opinion of October 19, 1967, which he saw for the first time on October 23, 1967, denying the motion to suppress the evidence seized; that he wanted to tell the trial judge that he was prejudiced; that his reference to a "kangaroo court" was made to people around him as he was facing the rear of the court in his attempt to leave; that one of the court officers seized him and that he fell to one knee, and that his papers and briefcase were thrown out of his hand as he was taken into custody. His trial counsel at the time, Irvin B. Booker, testified on behalf of defendant that he represented defendant at the motion to suppress and at the trial in Morristown; that defendant did not utter the word descriptive of excrement as charged in the certificate; that at the point where it is alleged defendant uttered the word, there was no disruption of the proceeding; that in regard to the incident of October 24, 1967, he wanted to address the court to challenge the array and to request the trial judge to disqualify himself; that no written challenge to the array (see R.R. 3:7-2(b)) or formal motion for disqualification (see R.R. 1:25B(b)) had been made; that he was not given an opportunity to address the court in regard to these matters, and that when defendant said that he had something he wanted to say, he was addressing him (Booker).
Clifton Carter testified on behalf of defendant that he was present in court on October 17, 1967 during the hearing of the motion to suppress, seated about 18 feet from defendant; that during the hearing defendant was at one point reading a book; that at that point he heard from defendant a sound, which he thought was a sigh of emotion; that defendant did not utter any word descriptive of excrement; *501 that there was no interruption of the proceeding in progress, and that while he was present in court he heard groans from spectators.
Nettie Rogers also testified on behalf of the defendant. She stated that she was present in Court at the hearing of the motion to suppress on October 17; that she was about 18 feet away from defendant; that she did not hear defendant say anything; that there was no utterance from him; that there was no interruption of the proceeding; and that there were moans and sounds from the spectators.
Both of defendant's codefendants at the motion to suppress and trial testified on behalf of defendant at this proceeding. Charles McCray, one of the co-defendants, testified that he was sitting right next to defendant at the October 17 session of the court, and that defendant did not say anything. He further testified that on October 24, at the trial in Morristown, defendant was addressing his attorney Booker when he said that there was something he wanted to say and when he said "This isn't a Court of justice"; that one of the court officers, Black, tackled defendant, knocking him down, and that he heard the defendant refer to a "kangaroo court" while defendant was facing Black.
Barry Wynn, the other codefendant, also testified on behalf of defendant in this proceeding. He said he was sitting next to defendant in court on October 17; that the defendant did not utter the word descriptive of excrement attributed to him; that he heard some of the spectators making sounds, and that defendant did not say anything; that in regard to the October 24 incident, defendant was trying to approach Booker when he said to Booker, "Why can't I make a statement?" He further testified that defendant mentioned to the trial judge that he had read his decision the night before and that he would not be judged by people who were not his peers, and he started to leave the courtroom, and that court officer Black knocked defendant off his feet and defendant's briefcase fell to the floor.
*502 Horace Brown and Theodore Pinckney both testified on behalf of defendant, attesting to his good character in the community.
Joseph Brown testified on behalf of the defendant that he was in Court on October 17th and that he did not hear the defendant say the word descriptive of excrement.
Charles Black, a court officer appearing on behalf of the State in rebuttal, testified that he was in attendance in Morristown on October 24, 1967; that he heard defendant refer to a "kangaroo court"; that he (Black) had his back to the judge at the time, and that defendant at the time was facing him and the bench.
"The word `contempt' signifies a public offense. It refers to a contempt of government * * *." New Jersey Dept. of Health v. Roselle, 34 N.J. 331, 337 (1961). "The contempt, i.e., the public wrong, consists of a defiance of governmental authority." Ibid. "The contempt power is essential to the maintenance of respect for the courts and such orders as may be rendered by them." In re Newark Teachers' Ass'n, 95 N.J. Super. 117, 120 (App. Div. 1967).
"A contempt of court has been defined as a disobedience to the court by acting in opposition to its authority, justice and dignity. Generally speaking, he whose conduct tends to bring the authority and administration of the law into disrepute or disregard, interferes with or prejudices parties during litigation, or otherwise tends to impede, embarrass, or obstruct the court in the discharge of its duties is guilty of contempt." In re Bozorth, 38 N.J. Super. 184, 188 (Ch. Div. 1955).
The term also includes the interruption of proceedings of a judicial body "by disorderly behavior or insolent language either in its presence or so near thereto as to disturb its proceedings or impair due respect for its authority." 3 Wharton's Criminal Law and Procedure § 1329, p. 700 (1957). See also 4 Blackstone, Commentaries (Lewis ed., 1922) 284-285, at p. 1674. And see N.J.S. 2A:10-1(a) and (c) and N.J.S. 2A:10-7.
*503 The rationale of the legal offense of criminal contempt is conduct tending to obstruct the administration of justice. See Sarner v. Sarner, 28 N.J. 519, 524 (1959), certiorari denied, 359 U.S. 533, 79 S.Ct. 1137, 3 L.Ed.2d 1028 (1959), rehearing denied, 360 U.S. 940, 79 S.Ct. 1446, 3 L.Ed.2d 1552 (1959), rehearing denied 361 U.S. 941, 80 S.Ct. 364, 4 L.Ed.2d 361 (1960). Our New Jersey cases uniformly hold that any act or conduct which obstructs or tends to obstruct the administration of justice constitutes a contempt of court. In re Caruba, 139 N.J. Eq. 404, 411 (Ch. 1947), affirmed 140 N.J. Eq. 563 (E. & A. 1947), petition denied, 142 N.J. Eq. 358 (Ch. 1948), certiorari denied 335 U.S. 846, 69 S.Ct. 69, 93 L.Ed. 396 (1948); and State v. Zarafu, 35 N.J. Super. 177, 180 (App. Div. 1955). As pointed out in In re Caruba, supra, 139 N.J. Eq., at p. 411, "`The essence of contempt is that it obstructs or tends to obstruct the administration of justice.' Fox, The History of Contempt of Court 216."
Accordingly, our inquiry here is to determine from the evidence whether any act or conduct of defendant on October 17 or October 24, 1967 while in the presence of the court obstructed or tended to obstruct the course of justice.
From all of the evidence in the case I find that it has been established beyond a reasonable doubt that on October 17, 1967, at the hearing on the motion to suppress evidence, the defendant uttered a word defined as "excrement" and usually considered a vulgar word, and also defined as a slang word meaning "nonsense" or "foolishness." See Webster's Third New International Dictionary (unabridged, 1965). In regard to the apparent inconsistency between the witnesses for the prosecution, who testified affirmatively on the subject, i.e., that they heard defendant utter the word, and the testimony of the witnesses, who testified on behalf of defendant, that they did not hear it, 4 Jones on Evidence (5th ed. 1958), § 985, pp. 1856-1857, points out:
*504 "Testimony is affirmative or positive if it consists of statements as to what witness has heard or seen; it is negative if the witness states that he did not hear or did not see the phenomenon in question. This being the distinction between testimony which is affirmative and testimony which is negative, it is an established rule that, where the one form of statement is opposed to the other, the affirmative testimony must be deemed to outweigh that which is merely negative.
In other words, `the testimony of a credible witness, that he saw or heard a particular thing at a particular time and place is more reliable than that of an equally credible witness who, with the same opportunities, testifies that he did not hear or see the same thing at the same time and place.' The reason for this rule is that the witness who testifies to a negative may have forgotten what actually occurred while it is impossible to remember what never existed.
Where two witnesses directly contradict each other, and the veracity of neither is impeached, the presumption of truth is in favor of the witness who swears affirmatively. * * *"
See also Rapp v. Public Service Coord. Transport, Inc., 15 N.J. Super. 305, 311 (App. Div. 1951), affirmed 9 N.J. 11 (1952).
It is undisputed that the utterance of this word did not disrupt the judicial proceeding then in progress. Here the sum total of the positive testimony of the witnesses who appeared on behalf of the prosecution, including the trial judge, was that there was no reaction or response by the court to the utterance, the trial judge stating that the court reporter raised an eyebrow when the word was uttered. While there is no reasonable doubt that the word was uttered by defendant, there is considerable doubt, particularly in light of the testimony of the witnesses for the prosecution on the subject, as to whether in the circumstances it was contumacious or obstructed or tended to obstruct the administration of justice. It is undisputed that it created no disturbance or disorder in the courtroom, and that the proceeding then in progress continued uninterrupted. As pointed out by Judge (now Justice) Haneman in In re Bozorth, supra, 38 N.J. Super., at p. 195, "* * * since courts in criminal contempt proceedings are sitting, to all intents and purposes, on their own function, the power to punish should be used only in flagrant *505 cases and with the utmost forbearance. * * *" See also State v. Gussman, 34 N.J. Super. 408, 412 (App. Div. 1955); and see also In re Mattera, 34 N.J. 259, 272 (1961), wherein Chief Justice Weintraub points out that "The summary contempt power is indeed awesome. * * * It is a power which can be justified by necessity alone."
Accordingly, in regard to the first charge set forth in the certification, I find defendant not guilty of contempt as charged.
In regard to the second charge set forth in the certification, I find from all of the evidence in the case that it has been established beyond a reasonable doubt that on October 24, 1967, during the trial of the case in Morristown, defendant did contumaciously and in willful disregard of the court's directives impede and obstruct the court in the discharge of its duties, did willfully misbehave in the actual presence of the court, and by insolent language in the court's presence did willfully disturb its proceedings then in progress, and that the contemptuous conduct of the defendant consisted of (1) his insistence that he speak to the court after having been directed by the court that he could do so only through his attorney; (2) his statements in the presence of the court as set forth in the certification, and (3) his attempt to leave the courtroom and thereby interrupt the trial then in progress.
The phrase "kangaroo court" used by defendant is defined in part in Webster's Third New International Dictionary, supra, as "a mock court in which the principles of law and justice are disregarded or perverted * * * a court * * * characterized by irresponsible, unauthorized, or irregular status or procedures * * *."
In explanation and mitigation of his conduct defendant testified that he was attempting to inform the trial judge of his disqualification to conduct the case, in light of his opinion denying the motion to suppress evidence, and that when he was not permitted to make a statement, he attempted to leave the courtroom but was detained by an *506 order of the court that he be taken into custody. It is here noted that on defendant's appeal to the Appellate Division from his conviction and sentence for the unlawful possession of weapons, the Appellate Division found "that the motion to suppress the evidence seized was properly denied, for the reasons stated in the opinion of the trial judge." State v. Jones, supra, 104 N.J. Super., at p. 66. Moreover, the proper procedure for applying to a judge for his disqualification is specifically set forth in R.R. 1:25B(b) as follows:
"Any party, on motion stating the reason or reasons therefor, may apply to a judge for his disqualification, which motion shall be made before trial or argument."
This procedure provided by our rules was not followed. Beyond this, if defendant felt aggrieved by any action of the court, his remedy was by appeal to the Appellate Division (a remedy which, ultimately, he successfully pursued from the conviction for unlawful possession of weapons and from the conviction for contempt), and not by a contemptuous outburst such as is demonstrated by the evidence. In In re Megill, 114 N.J. Eq. 604 (Ch. 1933), it is pointed out that:
"The requirements of good government demand that judicial error be corrected in the orderly manner prescribed by law, rather than by venomous complaint * * * Our government is a government of laws, not of men; and, if orderly government survives, law must remain supreme * * * if confidence in the judicial branch of the government is destroyed we must inevitably return to trial by battle." (at p. 609)
Accordingly, I find that it has been established beyond a reasonable doubt that defendant is guilty of the second charge of contempt of court as set forth in the certificate.[1]
NOTES
[1] Following sentencing procedure, a fine of $200 was imposed upon the defendant on this conviction.