PATTERSON, Presiding Judge.
The appellant, Frank H. Hawthorne, Jr., appeals from Circuit Judge Joseph Phelps’s order holding him in direct criminal contempt of court. He was sentenced to complete 10 hours of continuing legal education (CLE) courses. He now raises two issues on appeal; however, because we are reversing the appellant’s conviction, we need only address whether the trial court acted properly by holding the appellant in direct criminal contempt of court.
The act that is the basis for this appeal occurred during the closing argument phase of State v. Long (CR-91-371) on November 5, 1991, at which time the following occurred:
“THE COURT: _Ms. Frith, the jury is with you.
“(Whereupon, Ms. Frith made closing statement to the jury without objection) “THE COURT: Mr. McPhillips, Mr. Hawthorne.
“MR. McPHILLIPS: Your Honor, we are going to divide up our time. Frank is going to go first and I will close.
“MR. HAWTHORNE: ... You know, folks, I’m sorry to get so emotional; but this is getting to me. When I think about that man and his family, and his little babies, and I’m sorry to say this; but those sons of bitches shouldn’t be doing this. This is wrong. Shane Stokes is who I’m talking about, not law enforcement. It isn’t right. You say why did he do it the second and third time? ....
“(Whereupon, Mr. Hawthorne completed his portion of the closing argument, after which Mr. McPhillips made his portion of the closing argument)
“THE COURT: Let’s take a stretch break.
“(Whereupon a short recess was taken, at the expiration of which the following occurred:)
“THE COURT: All right, Mr. Graddick.
“MR. GRADDICK: Ladies and Gentlemen, let me thank all of you for coming down as a citizen of this community and spending time and doing something that is probably the most important thing in our entire system, and that’s serving on the jury to determine people’s fate. I’ve been doing this since 1970. To be quite honest with you, I stood up in front of a *437 jury not long ago and told them that I had probably tried over 500 cases in my life and I haven’t gotten through one without somebody saying something ugly about me. And I still haven’t. But I would say this today to you, and I’ve got to apologize to you on behalf of this system, because I am an officer of the court. We don’t normally refer to one another in the courtroom in the fashion which we were referred to. I know that I have been called before deceitful, that I tried to trick people, that I abused and misused my power, that I’ve taken advantage of people, that I have a political career that is going to be made or broken, or something, as a result of what I do as District Attorney of Montgomery County. In trying a case I’ve been said to have set up, and the worst governmental setup in the world; but I don’t recall ever being called seedy, and I’m not sure I’ve ever been referred to as slippery, and I know I’ve never been called an s.o.b.
“MR. McPHILLIPS: Your Honor, we object. Mr. Hawthorne made it clear he was referring to Shane Stokes when he made that reference. He pointed in their direction; but then he said, ‘I’m referring to Shane Stokes, not them.’
“THE COURT: It was highly improper to use that language in the courtroom.
“MR. HAWTHORNE: And I would respectfully withdraw it and I apologize to the Ladies and Gentlemen of the Jury and the Court.”
(Emphasis added.)
On November 15, 1991, Judge Phelps gave the appellant an opportunity to be heard as to whether he should be held in contempt of court for using the phrase “sons of bitches.” On November 21, 1991, Judge Phelps issued an order finding the appellant guilty of direct criminal contempt of court. On January 2, 1992, the appellant’s counsel argued his “Motion for New Trial and/or Arrest of Judgment and/or to Enter Judgment of Acquittal,” and the motion was denied on January 13, 1992.
A.R.Cr.P. 33.1(a) defines direct contempt as follows:
“ ‘Direct Contempt’ means disorderly or insolent behavior or other misconduct, committed in open court, in the presence of the judge, which disturbs the court’s business, where all of the essential elements of the misconduct are in the view of the court, are actually observed by the court, and where immediate action is essential to prevent diminution of the court’s dignity and authority before the public.”
(Emphasis added.) A.R.Cr.P. 33.1(c)(1) defines “criminal contempt,” as it relates to this case, as “[mjisconduct of any person which obstructs the administration of justice and which is committed either in the court’s presence or so near thereto as to interrupt, disturb, or hinder its proceed-ings_” (Emphasis added.) The power of a court to punish summarily for contempt of court is derived from § 12-1-8, Code of Alabama 1975, which states, in pertinent part, the following: “The powers of the several courts in this state to issue attachments and inflict summary punishment for contempt shall not extend to any other cases than: (1) Disrespectful, contemptuous or insolent behavior in court, tending in any way to diminish or impair the respect due to judicial tribunals or to interrupt the due course of trial....” (Emphasis added.) Our inquiry shall be limited to determining whether the appellant’s use of the phrase “sons of bitches” amounts to “direct” “criminal” contempt as defined by Rules 33.1(a) and 33.1(c)(1) rather than § 12-1-8, because the trial court’s power to punish in this case is not questioned. The question is whether the conduct amounts to direct criminal contempt of court.
While the language used was unprofessional, indecorous, unnecessary, and unbecoming of a member of the bar, the record is devoid of any evidence that “immediate action [was] essential to prevent diminution of the court’s dignity and authority before the public.” See A.R.Cr.P. 33.1(a). This finding is supported by the fact that the trial court waited almost an hour before stating, “It was highly improper to use that language in the courtroom,” although the court later stated that he wait *438 ed because he did not want to prejudice the defendant.
Most importantly, the record is devoid of sufficient evidence that the appellant’s use of the phrase “sons of bitches” “obstructed] the administration of justice” or interrupted, disturbed, or hindered the court’s proceedings. Cf. Eaton v. City of Tulsa, 415 U.S. 697, 698, 94 S.Ct. 1228, 1230, 39 L.Ed.2d 693 (1973) (appellant's use of term “chiekenshit” in reference to defendant rather than to judge or officer of court did not “constitute an imminent ... threat to the administration of justice” and could not constitutionally support a criminal contempt conviction); George v. Toal, 6 Ill.App.3d 329, 286 N.E.2d 41 (1972) (abstract only) (counsel’s statement to opposing counsel before the court, but out of the presence of the jury, “May I complete my God damn statement?” held not contemptuous); State v. Jones, 105 N.J.Super. 493, 253 A.2d 193 (1969) (counsel’s utterance of word defined as “excrement” and also as slang for “nonsense” or “foolishness” held not contemptuous because it did not disturb or interrupt the proceeding). But cf. Carroll v. State, 350 So.2d 723 (Ala.Cr. App.1977) (veniremember’s vulgar remarks to female court reporter while court was in session, but judge was away from the bench held contemptuous because conduct “disturbed, obstructed, and delayed the administration of justice” because she tried to flee from his advances).
“With respect to all of the component interests of justice that may at times compete with the vigorousness of advocacy, interference with any or all of them must threaten imminent harm to the administration of justice of some sufficient magnitude in order to warrant exercise of the contempt power. The contempt power should not respond to a demand for the imposition of order for order’s sake, or respect purely for the sake of respect. These interests are insufficient in themselves to merit enforcement by contempt sanctions; it is only where they are encroached upon so egregiously as to create an obstruction of the trial that exercise of the contempt power may be appropriate.”
[[Image here]]
“Similarly, where conduct disrespectful of the court is at issue, it should not be targeted as a cognizable harm under the contempt power unless it is so extreme or occurs in circumstances so sensitive as to threaten the administration of justice. Disrespect for the judge in the courtroom carries the potential for influencing other participants in the trial process to take the judge and the rules of our justice system less seriously. An attorney’s face-to-face insult of a judge can also interfere with the judge’s own ability to do her job properly.”
Raveson, Advocacy and Contempt: Constitutional Limitations on the Judicial Contempt Power — Part One: The Conflict Between Advocacy and Contempt, 65 Wash.L.Rev. 477, 558-59 (July 1990) (notes omitted) (some emphasis added).
The trial court stated that the court’s business was disturbed as it worked on its entrapment charge to the jury during closing arguments. This is simply an insufficient interruption, disturbance, or hindrance to the court's proceedings to support a finding of direct criminal contempt of court. Moreover, the Court of Civil Appeals has held that “[a]n error in judgment without clear and convincing evidence of bad faith intent is insufficient for a finding of contempt:” In re Powers, 523 So.2d 1079, 1082 (Ala.Civ.App.1988) (citing In re Carter, 412 So.2d 811 (Ala.Civ.App.1982).
Based on the foregoing, the judgment of the circuit court is reversed and a judgment rendered.
REVERSED AND JUDGMENT RENDERED.
All Judges concur.