104 N.J. Super. 57 (1968)
248 A.2d 554
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
EVERETT LEROI JONES, CHARLES MCCRAY AND BARRY WYNN, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 9, 1968.
Decided December 23, 1968.
*58 Before Judges GAULKIN, COLLESTER and LABRECQUE.
Mr. Raymond A. Brown argued the cause for appellants.
Mr. Matthew J. Scola, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney).
The opinion of the court was delivered by GAULKIN, S.J.A.D.
Defendants were convicted and sentenced for the unlawful possession of weapons, N.J.S. 2A:151-41, and they appeal. They contend that (1) the court's charge was improper in that it went beyond permissible *59 comment on the evidence; (2) the arrest and search of defendants was without probable cause, was conducted with excessive force and was otherwise improper, and if guns were found (which defendants deny) they were unlawfully seized; (3) the trial judge was biased against defendants, and his bias pervaded the atmosphere of the trial and affected the jury to defendants' prejudice, and (4) the sentences were excessive.
Basically, the State's case was that the so-called "Newark riots" had commenced on July 13, 1967; in the early morning of July 14 police headquarters broadcast an alarm to look for a blue panel truck from which shots were being fired at police; at about 2:30 A.M. a police car occupied by five policemen came upon defendant Jones' Volkswagen "camper," described as "green"; the camper had come to a stop, or had been compelled to stop by the police car swinging in front of it, and four of the officers approached the car; the three defendants were in the car, Wynn driving, McCray in the passenger seat in front, and Jones in back. As one officer asked Wynn for his driver's license and the registration, Officer Gevers shone his flashlight into the camper from the passenger side and saw a revolver on a shelf under the dashboard; the three defendants were then ordered out of the camper; while Jones was getting out, a revolver fell from underneath his tunic; the three were then placed under arrest; a box of bullets was found in a paper bag on the front seat, and six bullets in Wynn's pants pocket.
Defendants denied that there were guns in the car or on their persons, and claimed that the charges were falsely made by the police to cover up their own misbehavior. Defendants claimed that they had done nothing wrong and were on their way home; they were stopped without cause, dragged from the camper and beaten, either because the police wrongly thought theirs was the "blue panel truck" whose occupants had been firing at police, or because the police (or some of them) knew Jones as a militant, or because the police were *60 tired, nervous, over-worked and resentful of Negroes because of the rioting. Defendants said they were so severely beaten that at least two of them  Jones and McCray  had to be taken to the hospital by the police for medical attention. Defendants argued that consequently, when they realized who Jones was and that defendants had done nothing to deserve the beatings they received, the police, to "cover up," made the false charge against them of unlawful possession of firearms. Counsel for defendants charged in their summations that the police "fabricated" the story, "put those guns in that car to cover up this brutal beating," "to justify their action."
In short, the issue was almost entirely one of credibility  whether the police or defendants were to be believed. Most of the summations of counsel and of the prosecutor were devoted to this one question.
Defendants do not contend that the verdict was against the weight of the evidence. However, they do contend that since credibility was the paramount issue, the judge's charge was devastatingly improper and fatally unfair. They claim not only that it went far beyond comment on the evidence but that it became a summation on behalf of the State of a type which even a prosecutor would not be permitted to make. They claim the judge in florid language extolled and defended the police while, with sarcasm and scorn, he belittled defendants and their contentions. Beyond that, and most important, they claim that the charge was an exhortation to the jury to support the police by convicting defendants.
To be fair to the State as well as to defendants, it is necessary to reproduce without a break what we deem to be the most critical portion of the charge. The judge said (paragraph numbering ours):
"1. You saw and heard each of these officers testify. The defendants would have you believe that they are prevaricators and that they committed the most flagrant kind of perjury when they stated under oath the manner in which they found and removed the two *61 loaded revolvers and the ammunition from the Volkswagen which the defendants occupied at two-thirty A.M. on July 14, 1967.
2. Did they appear to you to be evilly disposed and wicked men who would resort to such calumny? Is it conceivable that these five men in blue would confer and agree together to commit such an unconscionable, outrageous act? In the final analysis, ladies and gentlemen, what interest did these officers have at the time of the arrest other than to restore law and order under extremely hazardous conditions?
3. By the same standards, consider, if you will, the demeanor of the defendants and their interest in the outcome of this trial. Did they testify with candor? Were their answers responsive and forthright or were they evasive? Do you believe that Jones was riding on the front seat in order to receive instructions in the operation of his motor vehicle between the hours of eleven-thirty P.M. and two-thirty A.M. or was this testimony introduced merely in an attempt to contradict and discredit the testimony offered by the officers that Jones was pulled out of the rear of the car?
4. I charge you that you are to consider all of the evidence in this case including the exhibits but you are not to be confused or diverted from the central issue in this case which is the guilt or innocence of these defendants for the illegal possession of two revolvers by the mass of trivia which unfortunately has crept into this trial.
5. What is the fact? That, ladies and gentlemen, is for your determination because as I have already indicated you are the sole, the exclusive and the ultimate judges of the facts. You must determine where the truth lies.
6. In connection with your consideration of that problem you will, of course, have in mind the attitude, bearing and demeanor of the several witnesses on the witness stand, the manner in which they gave their testimony, the interest that many of them may have in the outcome of the proceedings, the impression generally that they made upon you as to truthfulness and the inherent probability or improbability of their testimony tested by your own common sense and your own common experience. You must resolve the facts in this case, apply the law to the facts and render your verdict.
7. In the final analysis, ladies and gentlemen, the police officer is the shield of the community against the use of violence and other lawless acts. I also remind you that a crime is a public wrong; that is, a wrong of such a public character that the sovereignty, the authority and the majesty of the entire body politic prosecutes the offender as one who has committed a wrong against its peace and dignity.
Our government cannot exist or survive without the rule of law. `Where law ends tyranny begins.'
If you find after due consideration and comparison of all of the evidence and in accordance with the principles of law as I have *62 enunciated them to you that the State has failed to sustain the required burden of proof then it is your duty to find the defendants not guilty but if, on the other hand, you believe the testimony of Officers Gevers, Spiessbach, McCormick, Scarpone and Delaney and are satisfied that the State has established the guilt of each defendant beyond a reasonable doubt on the essential elements of the offense alleged in the indictment your verdict should be guilty as charged."
Defendants object chiefly to paragraphs numbered 1, 2 and 7. We, too, are troubled by them.
The State contends that the judge had the right to make these statements, since at several points elsewhere in his charge he stated that the jurors were the sole and exclusive judges of the facts and the credibility of the witnesses, and that his comments on the evidence were not to be taken as binding on the jury. It is true that a judge may express "his views on the weight and value of evidence even to the extent of an opinion as to guilt, so long as he plainly leaves the sole determination of all factual issues to the jury * * *." State v. Begyn, 34 N.J. 35, 53 (1961); State v. Rudd, 49 N.J. 310 (1967). However, "The privilege of commenting on the evidence has its inherent limitations, and should not be abused. * * * Nor should a judge assume the role of a partisan advocate. The comment should be temperately and fairly made, and should not be argumentative or contentious to a degree which makes it characteristically an act of advocacy. * * * In criminal cases, the court should be cautious in the exercise of the power of comment with a view to protecting the rights of the defendant." 53 Am. Jur., Trial, § 589, p. 465.
In Billeci v. United States, 184 F.2d 394, 87 App. D.C. 274 (D.C. Cir. 1950), the court stated the rules which should govern a judge's comments upon the evidence. It said:
"The purpose of his comment is to aid, through his experience, the inexperienced laymen in the box in finding the truth in the confusing conflicts of contradictory evidence. In exceptional cases he may even express his opinion upon the evidence, or phases of it. But there is a constitutional line across which he cannot go. The accused *63 has a right to a trial by the jury. That means that his guilt or innocence must be decided by twelve laymen and not by the one judge. A judge cannot impinge upon that right any more than he can destroy it. He cannot press upon the jury the weight of his influence any more than he can eliminate the jury altogether. It is for this reason that courts have held time and again that a trial judge cannot be argumentative in his comments; he cannot be an advocate; he cannot urge his own view of the guilt or innocence of the accused.

* * * * * * * *
The public interest requires that persons who have committed crimes be convicted of them. But the responsibility for producing the evidence which will persuade twelve jurors of guilt beyond a reasonable doubt is upon the prosecutor. It is a serious public responsibility, but it is upon the prosecutor and upon him alone. The judge has no part in that task. The prosecutor represents society in the prosecution. The attorney for the defense represents the accused. The judge is a disinterested and objective participant in the proceeding. `Prosecution and judgment are two quite separate functions in the administration of justice; they must not merge.'"
In Strader v. United States, 72 F.2d 589 (10 Cir. 1934), Bridges, a federal narcotics agent, testified against defendant doctor charged with unlawfully giving Bridges prescriptions for narcotics. The defense was entrapment. The court described the conflict in the evidence as follows:
"Bridges, testifying with respect to the three sales made to him, stated that he was not an addict and did not say or indicate on any of the occasions in question that he was; that he told appellant he wanted a prescription; that no physical examination was made of him; and that the prescription was readily furnished on payment therefor at the rate of $1 per grain. On the other hand, appellant testified that at the time Bridges came to his office on the first occasion he was in a serious physical condition, unshaven, unkempt, nervous, and with water running from his eyes; that a careful physical examination was made of him, having particular reference to his pulse, heart beat, and nervous reflexes; that he said he was an addict and used about two grains of morphine daily, and that he was in great bodily pain; that in appellant's belief it was necessary to provide morphine by means of the prescription in order to relieve his suffering; * * *."
The trial court charged the jury:
"`What purpose would Bridges have, then, for making a false statement? The maintenance of his position does not depend on his *64 making false statements, and you may therefore give to the testimony of Bridges the same weight and credibility that you would give any other person under similar circumstances, and it is for you to determine whether or not you will believe the statements made by Bridges and corroborated by Blanche Baker are true. On the other hand, you may, in giving consideration to the weight and credibility of the testimony of the defendant, you may consider the fact that he is defendant in this case. * * * you may take into consideration the fact that if he were guilty, what kind of a statement he would make, and is his interest in this case such as would lead him to make an untrue statement to secure his acquittal.'"
The Circuit Court of Appeals reversed, even though this portion of the charge was not specifically objected to. The court said:
"The instruction went an arrow's flight beyond the permitted bounds of fair and helpful analysis of the evidence or comment upon it as an aid to the jury in arriving at a just verdict. It singled out the testimony of Bridges and told the jury that there was no motive for him to testify falsely, that there was such a motive on the part of appellant, and it was intimated in a pointed way that for such reason false testimony might be expected from him. That was argumentative and prejudicial. Minner v. United States, supra [10 Cir., 57F 2d 506]; Yoder v. United States (C.C.A. [10 Cir.]) 71 F.2d 85; Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321.
* * * If appellant issued the prescriptions in good faith as a physician, believing Bridges to be a bona fide patient, for the purpose of curing disease or relieving suffering, he was not guilty. Boyd v. United States, supra, [271 U.S. 104, 46 S.Ct. 442, 70 L.Ed. 857]. His own testimony was submitted in an effort to establish that fact, and, in the very nature of things, it was the focal point of his defense. The instruction segregated the testimony and emptied it of effect. We think the error was sufficiently serious that it should be corrected, even though no specific exception was taken at the time."
See also Starr v. United States, 153 U.S. 614, 14 S.Ct. 919, 38 L.Ed. 841 (1894), and the annotations in 95 A.L.R. 789 and 113 A.L.R. 1308.
As Justice Proctor said in Village of Ridgewood v. Sreel Investment Corp., 28 N.J. 121, 132 (1958) with reference to the parallel right of a judge to question witnesses:
*65 "* * * `the power to take an active part in the trial of a case must be exercised by the judge with the greatest restraint, especially before a jury.' There is a point at which the judge may cross that fine line that separates advocacy from impartiality."
See also State v. Guido, 40 N.J. 191, 207-208 (1963).
As Chief Justice Weintraub said in Guido:
"It is difficult to review a charge of unfairness upon a dry record. A person's manner may negate a barb his printed word seems to hold, just as it may supply a sting the record will not show." (at p. 208)
We think that here the dry record shows that the charge went unfairly beyond mere comment on the evidence. The import of the charge was not only that the judge believed the testimony given by the police, but that he thought the jury should do likewise. And paragraph 7 of the charge was clearly no comment on the evidence but rather a reason for accepting the police testimony, not because of its believability but because the witnesses were policemen. This was obviously improper. Cf. State v. Corbo, 32 N.J. 273 (1960); State v. Walker, 33 N.J. 580 (1960); State v. Bowden, 62 N.J. Super. 339, 362 (App. Div. 1960). Paragraph 7, it must be recalled, came shortly after the judge's reference to the police witnesses as "these five men in blue." Witnesses should not be referred to in such terms, for the jury may consider them to be expressions of admiration of the witnesses and certification of their credibility. And, finally, it must be noted that the admonition that "the police officer is the shield of the community against the use of violence and other lawless acts," and the balance of paragraph 7, followed immediately after paragraph 6 in which the judge directed the jury to consider the interest of the witnesses in the outcome of the case, etc.
The State argues that if the passages complained about by defendants are read in the context of the entire charge, they are harmless. We have studied the entire charge carefully *66 and we find nothing in it which materially ameliorates the prejudice. On the contrary, there are other parts of the charge which we have not mentioned specifically which add to rather than detract from the force of the impropriety. For example, although it is admitted that Jones and McCray were treated at the hospital for injuries, at one point in the charge the judge said "except for lacerations indicated in the hospital records, do you believe that the defendants actually suffered the injuries which they relate or is this an attempt to beguile you by gross exaggeration and irresponsible charges?" The reference to the "five men in blue" was in paragraph 2, which not only cast aspersions on the defense but concluded with the rhetorical question "What interest did these officers have at the time of the arrest other than to restore law and order under extremely hazardous conditions?"; paragraph 2 was followed by an overstated derogatory remark about Jones' testimony in paragraph 3; and in paragraph 4 the judge spoke of "the mass of trivia which unfortunately has crept into this trial" which, in the context of the trial, obviously referred to defendants' evidence about the alleged beatings and other misconduct of the police.
We find that the motion to suppress the evidence seized was properly denied, for the reasons stated in the opinion of the trial judge.
Since the convictions must be reversed because of the improprieties in the charge, we find it unnecessary to discuss the remaining points raised by defendants.
Reversed and remanded for a new trial.