263 N.J. Super. 602 (1993)
623 A.2d 791
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ANDRE P. STAPLES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 30, 1993.
Decided April 23, 1993.
*603 Before ANTELL, DREIER and SKILLMAN, JJ.
Zulima V. Farber, Public Defender, attorney for appellant (Robert L. Sloan, Assistant Deputy Public Defender, of counsel and on the briefs).
Stephen G. Raymond, Burlington County Prosecutor, attorney for respondent (Saralee Smith, Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by ANTELL, P.J.A.D.
Defendant was convicted after a jury trial of cocaine distribution within 1000 feet of school property, N.J.S.A. 2C:35-7, cocaine distribution, N.J.S.A. 2C:35-5a(1), and possession of cocaine, N.J.S.A. 2C:35-10a(1). The latter two convictions were merged into the conviction for distribution within 1000 feet of school property, and defendant was sentenced to a three-year term of imprisonment without parole eligibility, ordered to pay a $1000 Drug Enforcement and Demand Reduction penalty, a $50 laboratory fee, and a $30 penalty to the Violent Crimes *604 Compensation Board. His driving privileges were also forfeited for a period of six months.
According to the evidence, defendant had been identified by undercover officer Grant as the seller from whom he had purchased, for $20, a bag containing a quarter gram of cocaine. The alleged transaction took place on a street corner within 1000 feet of a school. After verifying that the substance was cocaine, the undercover officer radioed defendant's description and location so that a backup unit could later identify him as the seller. Defendant was arrested approximately a month after the sale.
The defense to the prosecution was that the State's case against defendant was manufactured by the police because one of the arresting officers, Lieutenant Hansen, had a grievance against defendant. Thus, the proceedings focused on the issue of credibility and on defendant's contention that Lieutenant Hansen had a motive to lie in his identification testimony. To enhance the credibility of its witnesses, in response to this defense, the prosecution pursued a pattern of questions and comments which are the primary subject of this appeal. Among the State's objectives was to communicate the thought that the case was not important enough to provoke the officers into giving false testimony. After a brief colloquy concerning the prosecutor's proposed redirect examination of Investigator Grant to demonstrate that the witness understood the penalties for perjury, the prosecutor asserted:
I just want to ask him if he understands the penalties for perjury and if that's worth a conviction on a $20.00 bag. That's my point, judge.
The court allowed the prosecutor to pursue the matter and the following questions and answers ensued:
Q. Are you aware of the  what the penalties are or that perjury is a serious offense in the State of New Jersey?
A. Yes, I am.
Q. And is your career and the penalties that you would sustain for perjuring yourself worth the conviction for a $20.00 bag of cocaine?
A. No it's not.

*605 Q. So, if what you were telling us here today was not truthful, it wouldn't be said; is that correct?
A. That's correct.
In summation, the prosecutor undertook to compare defendant's credibility to that of the police witnesses. In the course thereof the following was said:
Now, sure, Mr. Staples also came in here and took an oath, but let's talk about what  as Mrs. Zoltanski said  what does everybody have to lose? Well, Investigator Grant has been a police officer for twelve years. So I'd venture to guess that his pension is vested and he's going to retire with a pretty nice amount whenever he decides to. He's a sworn law enforcement officer. Lieutenant Hansen 
On plaintiff's objection the reference to Investigator Grant's pension was stricken and the court asked the jury not to "consider whether or not Investigator Grant is going to get a pension or isn't going to get a pension." After this somewhat vague instruction, the prosecutor continued with the following statements:
Lieutenant Hansen has been a police officer for over 20 years, another sworn law enforcement officer, and I am sure that he would not put his career and everything that comes with that on the line by coming in here and testifying falsely; and the same could be said for Detective Carrig.
The prosecutor's conduct was highly prejudicial and mandates a reversal.
A prosecutor may not express a personal belief or opinion as to the truthfulness of his or her witness's testimony. State v. Marshall, 123 N.J. 1, 154, 156, 586 A.2d 85 (1991). Nor may a prosecutor suggest to a jury that police witnesses will suffer penalties if a jury is unconvinced by their testimony. In State v. West, 145 N.J. Super. 226, 233, 367 A.2d 453 (App.Div. 1976), certif. denied, 73 N.J. 67, 372 A.2d 332 (1977), in a comparable situation, the prosecutor made the following statement in summation:
... Investigator Oakley, I submit to you, had no motive to fabricate, no motive to lie. This is one of many cases Investigator Oakley is involved in, and there is no way he would benefit from lying, there is a lot of harm that could come to him from lying because when he goes up there to testify he puts his hand on one of these and he swears that he's going to tell the truth. The police officer's career would be finished in a minute ...
*606 In that case, we remanded the matter for retrial with the admonition that the prosecutor's comments "were improper and should not be repeated on the retrial." Id. at 234, 367 A.2d 453.
The vice inherent in this kind of exhortation is that it unfairly invites the jury to speculate as to whether the effect of an acquittal would be to terminate the officer's career. The State does not even suggest herein that the outcome of the trial posed any potential for harm to the officer's career. Nevertheless, the jury was led to surmise that it was "on the line." Surely, there is no evidence to support such a belief. Moreover, even if there were, this would be completely irrelevant to the issues of the trial.
The comments of the prosecutor in this case were even more prejudicial than in State v. West. In addition to telling the jury that Lieutenant Hansen "would not put his career and everything that comes with that on the line by coming in here and testifying falsely," the prosecutor also intimated that Investigator Grant's pension benefits, which he had accumulated over twelve years, would be jeopardized. Apart from their irrelevance, the prosecutor's implications were, at the least, disingenuous.
As the Supreme Court said in State v. Ramseur, 106 N.J. 123, 322, 524 A.2d 188 (1987), "[s]tatements such as those made by the prosecutor are improper because they divert the jurors' attention from the facts of the case before them." See also State v. Rose, 112 N.J. 454, 520, 548 A.2d 1058 (1988). Moreover, it is "obviously improper" to imply that police testimony should be accepted, "not because of its believability but because the witnesses were policemen." State v. Jones, 104 N.J. Super. 57, 65, 248 A.2d 554 (App.Div. 1968), certif. denied, 53 N.J. 354, 250 A.2d 755 (1969).
Prosecutors must recognize the limits beyond which their advocacy may not stray. Here, in personally vouching for the credibility of the State's witnesses, in suggesting that police witnesses are believable because of their status as policemen *607 and in suggesting that an acquittal could significantly jeopardize their professional careers, the prosecutor violated fundamental restraints against prosecutorial excess. Defendant was thereby denied a fair trial.
According to defendant, Lieutenant Hansen had released defendant from jail about fifteen minutes after a prior arrest in exchange for defendant's promise to provide information concerning drug dealers. When defendant did not deliver the information as promised, the officer allegedly threatened defendant with reprisal. In rebuttal, the State introduced records from the county jail to show that defendant's prior confinements were for much longer than fifteen minutes. Defendant objected to the disclosure of all his previous detentions, contending that the jail he had referred to was a municipal police lockup, and that the evidence of his prior brief incarcerations in the county jail should not have come to the jury's attention. In view of the fact that we are remanding the matter for retrial, it is unnecessary for us to decide whether the admission of the county jail records constituted error under the circumstances. Since it is now clear that defendant's testimony concerning the fifteen minute confinement related to a local jail, and not the county jail, we are confident that the offer of the county institution's records will not be repeated.
Reversed and remanded for a new trial.