NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4142-14T3

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

PANAGIOTI N. SOURIS,

 Defendant-Appellant.

_____________________________

 Submitted December 6, 2016 – Decided June 8, 2017

 Before Judges Koblitz and Sumners.

 On appeal from Superior Court of New Jersey,
 Law Division, Monmouth County, Indictment No.
 13-10-1908.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Solmaz F. Firoz, Assistant
 Deputy Public Defender, of counsel and on the
 brief).

 Christopher J. Gramiccioni, Monmouth County
 Prosecutor, attorney for respondent (Keri-
 Leigh Schaefer, Assistant Prosecutor, of
 counsel and on the brief).

PER CURIAM
 Following a jury trial, defendant Panagioti Souris was found

guilty of six third-degree crimes: possession of a controlled

dangerous substance, specifically heroin, N.J.S.A. 2C:35-10(a)(1)

(count one); possession of heroin with intent to distribute,

N.J.S.A. 2C:35-5(b)(3) (count two); distribution of heroin,

N.J.S.A. 2C:35-5(b)(3) (count three); possession of heroin,

N.J.S.A. 2C:35-10(a)(1) (count four); possession of heroin with

intent to distribute, N.J.S.A. 2C:35-5(b)(3) (count five); and

distribution of heroin, N.J.S.A. 2C:35-5(b)(3) (count six).1 At

sentencing, after merger of counts one and two into count three,

defendant was sentenced to a five-year prison term. The judge

then merged counts four and five into count six, and sentenced

defendant to a concurrent five-year prison term.

 On appeal, defendant raises the following points:

 POINT I

 THE STATE'S IMPROPER BOLSTERING OF ITS POLICE
 OFFICER WITNESS DURING SUMMATION CONSITUTED
 MISCONDUCT THAT DEPRIVED DEFENDANT OF A FAIR
 TRIAL.

 POINT II

 THIS CASE SHOULD BE REMANDED FOR RESENTENCING
 BECAUSE THE SENTENCING COURT DID NOT CONSIDER
 MITIGATING FACTORS SUPPORTED BY THE RECORD AND
 BECAUSE DEFENDANT'S SENTENCE IS EXCESSIVE.

1
 Counts one, two and three occurred on May 2, 2013, while counts
four, five and six occurred on May 7, 2013.

 2 A-4142-14T3
We have considered these arguments in light of the record and

applicable legal standards. We affirm.

 I.

 We discern the following facts from the trial record relevant

to this appeal. Neptune Township Police Officer Nicholas Taylor,

who was temporarily assigned as a detective in the Monmouth

County's Narcotic Strike Force, testified that at approximately

4:17 p.m. on May 2, 2013, he called and arranged an undercover

"narcotic buy" to purchase a "brick of heroin"2 from a person he

knew as "Pete," later identified as defendant. According to

Taylor, he was told to meet defendant at a condominium complex in

Marlboro Township, where Narcotic Strike Officers would

subsequently set up surveillance before Taylor drove to the

complex's parking lot. Taylor testified that after he parked and

notified defendant by phone that "[he] was here[,]" defendant

exited his residence, and entered Taylor's vehicle from the front

passenger's side. Taylor further testified that defendant sold

him a brand of heroin called, "HBO," for $300, followed by a brief

conversation about future drug transactions. After driving a

"safe distance away[,]" Taylor stated that he called the

surveilling officers to report that he had completed a drug buy.

2
 A brick of heroin consist of fifty glassine folds of heroin.

 3 A-4142-14T3
 On May 7, at around noon, Taylor and defendant texted each

other arranging another purchase of heroin. Taylor testified that

he called defendant upon arrival at his townhouse, and defendant

told Taylor to "come inside, the door was unlocked." Taylor

entered the residence, and followed defendant into a room that had

the brick of heroin on a table. According to Taylor, after

defendant told him this was a different brand of heroin, "Body

Bag," than the last time, defendant "picked [the heroin] up, he

broke it open, removed all the thin individual bundles, showed

them to me, and eventually handed them to me" at which point,

Taylor paid defendant $300 then left in a few minutes. Each

transaction with defendant took about five minutes.

 The testimony of Strike Force members, Officers Joe Leon and

Anthony Valentino, and Detective Michelangelo Bonnano,

corroborated Taylor's testimony. Leon testified that on May 2,

after arriving fifteen minutes prior to Taylor to ensure visibility

of the drug transaction, he witnessed from approximately twenty-

five to thirty yards away, "a white male," exit the condominium,

then enter Taylor's vehicle for five minutes and return to his

residence. Valentino testified that on May 7, he provided onsite

surveillance, where he had a clear observation of Taylor entering

defendant's townhouse, and exiting after a few minutes. Bonanno,

as supervisor of the Strike Force, provided brief testimony

 4 A-4142-14T3
corroborating the location and officers involved in the undercover

narcotic buys from defendant.

 Defendant, the only defense witness, presented a completely

different story. He testified that on May 2, his roommate, a

construction worker, called him "around noon that day . . . because

he had left something that was needed at the jobsite[,]" but

defendant was unable to take the item to the jobsite. According

to defendant, his roommate called again sometime later that day,

and asked defendant, "[if] it [was] okay if [he had] a [co-] worker

come to the house and pick it up?" His roommate also commented

that "[t]hey're going to pick up what they're going to pick up,

and they're going to leave money for it." Defendant testified

that he agreed with the request.

 Defendant explained that shortly thereafter, he received a

call from an individual, whom he later identified as Taylor, who

introduced himself as "a friend of [his roommate]" who was supposed

to pick up the jobsite item. Defendant recounted that after he

gave Taylor his address and received a call as to Taylor's arrival,

he went into his roommate's room to retrieve the jobsite item.

Defendant testified that the item "looked like a rectangular box

. . . wrapped in some type of paper[,]" but defendant "had never

recognized anything like that before," as he "wasn’t a frequenter

of [his roommate's] room[.]" Defendant subsequently went to

 5 A-4142-14T3
Taylor, who was in his car parked outside, gave him the unopened

item, received cash in exchange, and conversed about the weather

briefly before he exited the vehicle. Defendant claimed that he

did not tell Taylor to call him again, and when he went back into

the townhouse, he put the money on the kitchen counter.

 As for May 7, defendant testified that his roommate called

at approximately 9:00 a.m. explaining, "that he had forgotten some

of his material for work" at their residence, and asked if

defendant could drop it off at his worksite. Defendant replied

that he could not, but he would be home for a short while if

someone could pick up the materials. His roommate said he would

call him back to let him know if someone could come by. After the

roommate called back, the same person who came by the first time,

Taylor, called defendant and stated he would be stopping by.

Taylor called when he arrived outside the townhouse. Defendant

told Taylor to come inside while he went to get the package from

his roommate's bedroom. Defendant stated that when he grabbed the

package, the paper packaging was "cracked" revealing the contents,

but he did not look inside the package as he placed it on the

dining room table. After Taylor entered, they engaged in

conversation about the weather. Taylor then grabbed the package,

looked into its cracked opening, placed money on the dining room

table, and left.

 6 A-4142-14T3
 During closing arguments, counsel focused on the credibility

of Taylor and defendant due to their conflicting testimony.

Defendant attacked Taylor's credibility, contending he did not

show his phone records documenting the calls and text messages

that were exchanged between them. Defendant also highlighted

Taylor's inexperience in conducting undercover narcotic

investigations, as evidenced by his lack of familiarity with the

term, "brick of heroin." In addition, defendant argued that

Taylor's five-minute transactions with defendant were contrary to

the quick contacts involved with drug sales, and demonstrated that

defendant did not know he was conveying drugs to Taylor.

 The prosecutor argued to the jury that "in order to find

[defendant's] story credible you have to say that [Taylor] is

lying, that [with] ten years of experience, hundreds of

investigations, [Taylor] is for some reason lying to you. . . .

Is he more credible, or is the defendant more credible?" After

summarizing the testimony of defendant and Taylor, the prosecutor

questioned whose account seemed to be reasonable, stating,

"[Taylor] was straightforward about his investigation[,]"

emphasizing Taylor's demeanor on the stand. After the prosecutor

commented that one of the surveilling officers was not lying,

defense counsel objected. She argued that in commenting on the

testimony of defendant and Taylor, the prosecutor was bolstering

 7 A-4142-14T3
Taylor's credibility because he "characterized in comparing the

two testimonies that one of them has to be lying, and in fact the

first time [the prosecutor] did it he said this officer with ten

years [of] experience."

 The judge overruled defendant's objection reasoning that the

State did not assert that Taylor had no motive to lie, and that

referencing his experience with drug transactions was not improper

bolstering as the State may rely on his experience and training

to recall the details of his interaction with defendant.

 After defendant was found guilty, he filed a motion for a new

trial and the State filed a motion for a discretionary extended

term under N.J.S.A. 2C:44-3(a). On April 10, 2015, the judge

denied both motions and sentenced defendant. The judge did not

find any mitigating factors, but applied aggravating factors

three, six, and nine. N.J.S.A 2C:44-1(a)(3) (risk to commit

another offense); -1(a)(6) (prior record and seriousness of

offense); -1(a)(9) (need for deterrence). The judge explained

that defendant's extensive prior criminal history of three New

Jersey convictions, as well as three out-of-state convictions, was

indicative that he presented a risk of committing another offense,

and therefore, needed to be deterred from violating the law. This

appeal ensued.

 8 A-4142-14T3
 II.

 We first consider defendant's contention in Point I that,

based upon State v. Frost, 158 N.J. 76 (1999), and State v. Murphy,

412 N.J. Super. 553 (App. Div. 2010), the prosecutor's closing

statement prejudiced defendant's right to a fair trial by attacking

defendant's credibility while strengthening Taylor's testimony.

In particular, defendant argues that, because credibility was the

critical issue at trial, the prosecutor's statements that Taylor

had no reason to lie and was more credible than defendant because

of his ten years in law enforcement were improper. We disagree.

 Prosecutors are required to act in accord with fundamental

principles of fairness. State v. Wakefield, 190 N.J. 397, 436

(2007), cert. denied, 552 U.S. 1146, 128 S. Ct. 1074, 169 L. Ed.

2d 817 (2008). The job of a prosecutor is "peculiar"; prosecutors

are tasked not to win, but to see that "'justice shall be done.'"

Ibid. (quoting Berger v. United States, 295 U.S. 78, 88, 55 S. Ct.

629, 633, 79 L. Ed. 1314, 1321 (1935)). While prosecutors may

strike hard blows in presenting their case, they may not strike

"foul ones." Ibid. And if a prosecutor crosses the line from

zealous enforcement of the law into foul play, a reviewing court

will reverse a conviction. Id. at 437 (quoting State v. Siciliano,

21 N.J. 249, 262 (1956)).

 9 A-4142-14T3
 The question of whether alleged misconduct has prejudiced a

defendant sufficient to reverse a conviction is whether on the

whole the conduct was "'so egregious as to deprive defendant of a

fair trial.'" Ibid. (quoting State v. Papasavvas, 163 N.J. 565,

625 (2000)). A defendant must establish two separate prongs to

justify reversing a conviction based on prosecutorial misconduct:

(1) the prosecutor's conduct must be "'clearly and unmistakably

improper'" and (2) it "'must have substantially prejudiced

defendant's fundamental right to have a jury fairly evaluate the

merits of his [or her] defense.'" Id. at 438 (quoting Papasavvas,

supra, 163 N.J. at 625).

 Prosecutors may "make vigorous and forceful closing arguments

to juries . . . and may remark on the credibility of a defense

witness' testimony." State v. Lazo, 209 N.J. 9, 29 (2012)

(internal quotation marks and citations omitted). "Consistent

with their obligation to seek justice, prosecutors may not advance

improper arguments. They cannot cast unjustified aspersions on

defense counsel or the defense . . . ." Ibid.

 As a general principle, it is improper for a prosecutor to

convey his or her personal opinion to a jury. State v. Michaels,

264 N.J. Super. 579, 640 (App. Div. 1993), aff'd, 136 N.J. 299

(1994). When a prosecutor injects his own personal opinion as to

the credibility of a witness, this may constitute prosecutorial

 10 A-4142-14T3
error. See State v. Farrell, 61 N.J. 99, 105 (1972). Such

bolstering can be considered particularly inappropriate when the

witness is a law enforcement officer. State v. Hawk, 327 N.J.

Super. 276, 285 (App. Div. 2000). The State may not assert that

a law enforcement officer witness is inherently credible based

solely upon his status. State v. Jones, 104 N.J. Super. 57, 65

(App. Div. 1968), certif. denied, 53 N.J. 354 (1969); see also

Frost, supra, 158 N.J. at 86. A prosecutor may not vouch for a

police officer's credibility by stating he or she would not lie

because of the magnitude of the charges, Frost, supra, 158 N.J.

at 85, or because he or she had no motive to lie, State v. R.B.,

183 N.J. 308, 331-32 (2005), or because he or she would face severe

consequences if not truthful. State v. West, 145 N.J. Super. 226,

233-34 (App. Div. 1976), certif. denied, 73 N.J. 67 (1977).

 On the other hand, "a prosecutor is permitted to respond to

an argument raised by the defense so long as it does not constitute

a foray beyond the evidence adduced at trial." State v. Munoz,

340 N.J. Super. 204, 216 (App. Div.), certif. denied sub nom.

State v. Pantoja, 169 N.J. 610 (2001). The court must consider

the nature of the defense remarks that provoke the prosecutor's

response. Ibid. In certain circumstances, "'[a] prosecutor's

otherwise prejudicial arguments may be deemed harmless if made in

 11 A-4142-14T3
response to defense arguments." State v. McGuire, 419 N.J. Super.

88, 145 (App. Div.), certif. denied, 208 N.J. 335 (2011).

 Applying these principles, we decline to reverse defendant's

conviction based on the prosecutor's comments, particularly given

the nature of defense counsel's closing remarks. The prosecutor

did not suggest that the jury should believe Taylor because he was

a police officer. The prosecutor's reference to Taylor's

experience was in direct response to defendant's contention that

Taylor's investigative techniques demonstrated he lacked

experience in investigating drug crimes, and Taylor's failure to

present telephone records to prove his communication with

defendant made his testimony unconvincing. Moreover, the

prosecutor did not tell the jury to accept Taylor's testimony

because he was a law enforcement officer, nor did he suggest that

Taylor had no motive to lie.

 Next, we address defendant's contention in Point II that the

judge did not consider mitigating factors that defendant's conduct

neither caused or threatened serious harm, and that he did not

contemplate that his conduct would cause or threaten serious harm.

N.J.S.A. 2C:44-1(b)(1) and (2). In particular, defendant claims

that his drug offense conviction did not involve weapons nor

violence. Further, defendant argues that his five-year sentence,

which is at the top of the range for third-degree offenses, was

 12 A-4142-14T3
excessive because it was not supported by aggravating factors

cited by the judge. Defendant contends that his lack of any

violent criminal history demonstrates that there is no risk that

he would commit another offense nor is there a need to deter him

from doing so.

 We begin by noting that review of a criminal sentence is

limited; a reviewing court must decide "whether there is a 'clear

showing of abuse of discretion.'" State v. Bolvito, 217 N.J. 221,

228 (2014) (quoting State v. Whitaker, 79 N.J. 503, 512 (1979)).

Under this standard, a criminal sentence must be affirmed unless

"(1) the sentencing guidelines were violated; (2) the findings of

aggravating and mitigating factors were not 'based upon competent

credible evidence in the record;' or (3) 'the application of the

guidelines to the facts' of the case 'shock[s] the judicial

conscience.'" Ibid. (alteration in original) (quoting State v.

Roth, 95 N.J. 334, 364-65 (1984)). If a sentencing court properly

identifies and balances the factors and their existence is

supported by sufficient credible evidence in the record, this

court will affirm the sentence. See State v. Carey, 168 N.J. 413,

426-27 (2001); State v. Megargel, 143 N.J. 484, 493-94 (1996).

 Here, we are not persuaded that the court erred in sentencing

defendant. In accord with the record, the judge appropriately

weighed the aggravating and mitigating factors. We find support

 13 A-4142-14T3
for the aggravating factors that were applied, and no basis for

the mitigating factors asserted by defendant. We have held that

"[d]istribution of cocaine can be readily perceived to constitute

conduct which causes and threatens serious harm." State v. Tarver,

272 N.J. Super. 414, 435 (App. Div. 1994). This is equally true

for distribution of heroin. The sentence does not shock our

judicial conscience. Defendant was eligible for an extended term,

which the court did not impose. Therefore, we shall not second-

guess and disturb the trial court's findings. See State v.

Bieniek, 200 N.J. 601, 608-09 (2010); State v. O'Donnell, 117 N.J.

210, 215-16 (1989).

 Affirmed.

 14 A-4142-14T3