# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4249-16T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

PATRIC D. REED-PRICE, a/k/a
PATRICK PRICE, PATRICK REED,
PAT REED, PAT REID, PATRICK
D REEDPRICE, PATRICK D. PRICE,
and PATRICK REEDPRICE,

     Defendant-Appellant.

_____

> Submitted September 17, 2018 – Decided September 20, 2018
>
> Before Judges Haas and Mitterhoff.
>
> On appeal from Superior Court of New Jersey, Law Division, Atlantic County, Indictment No.16-06-1349.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Michael T. Denny, Assistant Deputy Public Defender, of counsel and on the brief).
>
> Damon G. Tyner, Atlantic County Prosecutor, attorney for respondent (Nicole L. Campellone, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

An Atlantic County grand jury charged defendant in a seven-count indictment with first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(4) (count one); third-degree terroristic threats, N.J.S.A. 2C:12-3(a) (count two); fourth-degree criminal trespass, N.J.S.A. 2C:18-3(a) (count three); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (count four); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count five); third-degree witness tampering, N.J.S.A. 2C:28-5(a)(5) (count six); and fourth-degree contempt for violation of a domestic violence restraining order, N.J.S.A. 2C:29-9(b)(1) (count seven).

Following a trial, at which defendant represented himself, the jury convicted defendant of counts one through six. The trial judge then granted the State's motion to dismiss count seven.

The judge merged counts four and five into count one, and sentenced defendant on that count to eighteen years in prison, subject to the 85% parole ineligibility provisions of the No Early Release Act, N.J.S.A. 2C:43-7.2. By virtue of this conviction, defendant was also subject to Megan's Law registration and reporting requirements, and parole supervision for life. The judge sentenced defendant to a concurrent five-year term on count two, a concurrent eighteen-

month term on count three, and a concurrent five-year term on count six. This appeal followed.

On appeal, defendant raises the following contentions:

POINT I

THE PROSECUTOR'S IMPROPER TACTICS UNFAIRLY BOLSTERED THE CREDIBILITY OF THE COMPLAINING WITNESS. (Not Raised Below).

    A.    In Summation, The Prosecution Improperly Referred To The Defendant's Status [A]s Pro Se Counsel For Himself And Argued That The Complaining Witness Was More Credible Because She Was Willing To Be Questioned By The Accused.

    B.    The Prosecution Improperly Bolstered The Victim's Credibility When He Argued That She Had Not Told Any Lies During Her Testimony.

POINT II

THE SENTENCE IS MANIFESTLY EXCESSIVE AND UNDULY PUNITIVE BECAUSE IT WAS NOT OFFENSE-ORIENTED. (Not Raised Below).

We find insufficient merit in these contentions to warrant discussion in a written opinion. R. 2:11-3(e)(2). We add the following comments.

J.M. was the State's primary witness at trial. J.M. had been in a four-month dating relationship with defendant. On July 9, 2015, J.M. told defendant

3

that she was breaking up with him. The next day, defendant telephoned J.M. and asked her to leave work and speak to him at her apartment. She refused. Later that afternoon, J.M. went to her apartment to pick up some items for her young son, dropped the child at his grandmother's house, and went to a family barbeque.

In the evening, defendant asked the husband of J.M.'s landlord to let him into her apartment, and he agreed to do so. When the landlord learned that defendant was in the apartment, she immediately called J.M. to alert her. After speaking to the landlord, J.M. left the barbeque and drove home. On the way, J.M. called defendant and told him to get out of her apartment. J.M. then called her mother and asked her to stay on the phone with her as she entered the apartment.

When she went inside, J.M. saw defendant come out of the bathroom wearing a shirt wrapped around his head, and carrying a kitchen knife. J.M. screamed for her mother to call the police, and defendant took the telephone headset away from her. Defendant then put his hand over J.M.'s mouth, forced her head into the kitchen sink, and threatened to kill her.

Defendant told J.M. to go into the bedroom, and pushed and hit her when she did not immediately comply. Defendant then ordered J.M. to take off her

A-4249-16T1

pants. When she refused, he pulled them off of her and inserted two of his fingers into her vagina. J.M. begged defendant to think of her son, and defendant replied that if her son was there, he would have killed the child first and made J.M. watch.

J.M.'s mother called J.M. and defendant allowed her to answer, while putting the knife to her throat. J.M. gave one-word responses to her mother's questions, and defendant hung up the phone. When J.M.'s mother called back, defendant answered and said "everything is okay."

At that point, J.M. saw the light from a flashlight at her window, broke away from defendant, ran out of the apartment, and met two police officers in the parking lot. The police arrested defendant.

Sometime in April 2016, defendant sent J.M. a letter. He told J.M. that he was going to represent himself at the trial, and intended to force J.M. to attend every day of the proceedings, which he anticipated would last two years, so that she would miss work and get fired. However, he indicated that if she refused to come to court, she would not be subjected to the protracted litigation and subsequent negative consequences. Defendant did not call any witnesses or testify on his own behalf.

During his closing argument to the jury, defendant asserted that J.M.'s testimony was not credible. In his summation, the prosecutor pointed to several facts in the record to refute this claim. The prosecutor noted that J.M. testified about "an extremely embarrassing topic" in front of a "whole group of strangers," and had answered questions posed to her directly by defendant, the man who assaulted her. The prosecutor also reminded the jury that J.M. testified she had a prior conviction and did not "lie about it, she admitted everything about it." Finally, the prosecutor remarked that J.M.

> didn't lie when . . . defendant asked if the defendant was good to her son. She could have easily lied to make it look like . . . defendant was a jerk before this. She didn't. She took an oath to tell the truth, and I submit that based on her testimony and appearance, she did tell the truth, the good, the bad and the ugly.

In Point I, defendant argues that by making these comments, the prosecutor improperly vouched for J.M.'s credibility. We disagree.

Prosecutorial misconduct is not a basis for reversal unless the conduct was so egregious that it deprived the defendant of a fair trial. State v. DiFrisco, 137 N.J. 434, 474 (1994). Considerable leeway is afforded to prosecutors in presenting their arguments at trial "as long as their comments are reasonably related to the scope of the evidence presented." State v. Frost, 158 N.J. 76, 82 (1999). When, as here, the defendant fails to object to the prosecutor's

6

comments at trial, the allegedly "improper remarks will not be deemed prejudicial." State v. Timmendequas, 161 N.J. 515, 576 (1999).

No misconduct occurred in this case. It is well settled that "a prosecutor may not express a personal belief or opinion as to the truthfulness of his or her witness's testimony." State v. Staples, 263 N.J. Super. 602, 605 (App. Div. 1993). However, a prosecutor may argue that a witness is credible based on the evidence adduced at trial. State v. Scherzer, 301 N.J. Super. 363, 445 (App. Div. 1997).

Here, defendant argued in his closing that J.M. was not telling the truth. The prosecutor's brief comments were in direct response to that allegation. The prosecutor referred solely to evidence in the record and drew reasonable inferences from that testimony. While defendant argues that the prosecutor's remark about defendant questioning J.M. directly at trial was an improper reference to his "status as pro se counsel for himself[,]" the jury was fully aware that defendant was proceeding without an attorney and, as a result, was personally interrogating his alleged victim. Therefore, we reject defendant's arguments on this point.

In Point II, defendant argues that his sentence was excessive. This argument also lacks merit.

Trial judges have broad sentencing discretion as long as the sentence is based on competent credible evidence and fits within the statutory framework. State v. Dalziel, 182 N.J. 494, 500 (2005). Judges must identify and consider "any relevant aggravating and mitigating factors" that "are called to the court's attention[,]" and "explain how they arrived at a particular sentence." State v. Case, 220 N.J. 49, 64-65 (2014) (quoting State v. Blackmon, 202 N.J. 283, 297 (2010)). "Appellate review of sentencing is deferential," and we therefore avoid substituting our judgment for the judgment of the trial court. Id. at 65; State v. O'Donnell, 117 N.J. 210, 215 (1989); State v. Roth, 95 N.J. 334, 365 (1984).

We are satisfied the judge made findings of fact concerning aggravating and mitigating factors that were based on competent and reasonably credible evidence in the record, and applied the correct sentencing guidelines enunciated in the Code. Accordingly, we discern no basis to second-guess the sentence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4249-16T1