145 N.J. Super. 226 (1976)
367 A.2d 453
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
THOMAS WEST, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 6, 1976.
Decided November 24, 1976.
*228 Before Judges LYNCH, MILMED and ANTELL.
Mr. Thomas A. Pavics, Assistant Deputy Public Defender argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Michael H. Kessler, Assistant Prosecutor argued the cause for respondent (Mr. Edward W. McGrath, Union County Prosecutor, attorney).
The opinion of the court was delivered by ANTELL, J.A.D.
This is an appeal from a judgment of conviction for distribution of a controlled dangerous substance, N.J.S.A. 24:21-19(a) (1). Error is assigned in the refusal of the trial judge to order disclosure of an informant's identity, in the exclusion of evidence, and in prejudicial comments by the prosecutor during summation. The interrelationship of these contentions becomes clear from an examination of the parties' separate theories of the case.
According to the testimony of Investigator Oakley, the State's witness, he met defendant through a confidential police informer on a street corner in Elizabeth. The two spoke briefly in the informer's presence and defendant stated that he had some "dimes" to sell, that is, $10 quantities of a narcotic. The informer then walked some 10 to 15 feet away where he talked with someone else while the transaction was completed. Oakley placed two $5 bills in the open trunk of defendant's car and defendant took a small glassine envelope from his trouser pocket and handed it to the investigator who then left the scene.
*229 Defendant's version is that on that day a car driven by a male whom he later identified as Oakley, stopped at a corner where he was washing his car and discharged one Ronald Brown. Animosity had prevailed between Brown and defendant for some years, and when Brown asked that defendant sell him heroin defendant cursed and ordered Brown from the scene. He denied being introduced to Oakley or having participated with him in the criminal transaction. Two witnesses, one defendant's former wife and another a companion who was helping to wash defendant's car, corroborated defendant's account of the incident described.
Excluded from evidence was the testimony of William Harris, proffered by defendant, that about two weeks later Ronald Brown told him that he had bought drugs from someone else and falsely named defendant as the seller to the undercover agent. This statement was offered as a declaration against interest, but rejected for lack of "circumstantial trustworthiness." Offered and rejected on the same ground was testimony by defendant's sister, Gloria West. She would have testified that prior to the date of the alleged crime Brown told her he wanted to harm the defendant, who had once thrown Brown out of his home.
In addition to being hearsay, the trial judge also ruled this evidence was irrelevant since the indictment did not rest upon a sale to Brown. His extrajudicial statements were therefore regarded as unrelated to any of the issues legitimately presented and therefore inadmissible. What seems not to have been considered, however, was the explanation which defendant was trying to offer for the policeman's incriminating testimony. This was that the officer, satisfied in his own mind from the informant's advice that defendant was selling drugs, and believing it was a case where the end justified the means, falsely testified that the sale was made to him. In this way, so defendant argues, the charge could be prosecuted without revealing the informant and *230 without hobbling the prosecution in the distracting details of Brown's bitter personal relationship with defendant.
This was the line of defense by which defendant hoped to create a reasonable doubt. The nature of the defense is, of course, relevant on a motion for disclosure. State v. Milligan, 71 N.J. 373, pp. 390-391 (1976). Naturally, we express no opinion as to its merits, but it was one which should not have been foreclosed. Without it, all the jury could consider was defendant's word against a disinterested police officer's, and defendant's disadvantage in this contest was fully exploited by the prosecutor's repeated emphasis during summation on the policeman's lack of incentive to lie. Furthermore, knowing what defendant had tried to show, the prosecutor forced the issue to its limits when he categorically asked:
And where did the evidence come from if it didn't come from Thomas West to Richard Oakley? No explanation for that from the defense.
The unfairness of this rhetoric lay in the fact that these were the very questions which defendant urged could have been answered by the proffered evidence.
The interest of defendant in knowing if Brown is the informant lies in the fact that the latter's extrajudicial statements are meaningful only if he occupied this relationship with Oakley. Thus, he asked only that the State commit itself as to this vital fact. If Brown is the informer (and the State has in various ways during these proceedings left little question but that he is) the relationship between the discordant versions of what happened on the street and the testimony of Brown's alleged out-of-court statements becomes undeniably significant.
Evid.R. 36 (N.J.S.A. 2A:84A-28), which largely governs the point in question, provides:
A witness has a privilege to refuse to disclose the identity of a person who has furnished information purporting to disclose a violation of a provision of the laws of this State or of the United States to *231 a representative of the State or the United States or a governmental division thereof, charged with the duty of enforcing that provision, and evidence thereof is inadmissible, unless the judge finds that (a) the identity of the person furnishing the information has already been otherwise disclosed or (b) disclosure of his identity is essential to assure a fair determination of the issues.
The nature of the privilege and its underlying policy justifications have been extensively dealt with elsewhere. Suffice it to say that it is in reality a privilege afforded the government in recognition of the State's compelling need to protect its sources of information concerning criminal behavior. Strong reasons of policy favor nondisclosure of an informant's identity and "we must be mindful of the ease with which the privilege would be destroyed if disclosure were required without a substantial showing of a need for it." However, the privilege is not absolute and disclosure has been ordered where circumstances warrant. See State v. Oliver, 50 N.J. 39, 45, 47-48 (1967). Most recently our Supreme Court elaborated upon the factors to be considered as part of "the delicate and difficult balancing of interests called for." Cashen v. Spann, 66 N.J. 541, 555-557 (1975), cert. den. 423 U.S. 829, 96 S.Ct. 48, 46 L.Ed.2d 46 (1975). Citing Roviaro v. United States, 353 U.S. 53, 62, 77 S.Ct. 623, 628, 1 L.Ed.2d 639, 646 (1957), the court subscribed to the following statement of principle:
The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors. [at 553]
In support of the privilege the State offers little more here than general policy justifications. It has not been suggested that the informant is faced with any serious threat of harm. Nor is it said that his usefulness in other pending or prospective investigations will be jeopardized. On *232 the other hand, certain knowledge of the informer's identity in this case is an essential condition to establishing a defense. It is now only thinly concealed. Defendant points to a named individual and asks no more than the State confirm or deny that he is the one. Furthermore, accepting the State's version of the event, principles of accessoryship suggest that by having arranged the meeting and remaining present while the talk centered on "dimes," the informer at least closely approaches being a "participant" within the meaning of State v. Roundtree, 118 N.J. Super. 22, 32 (App. Div. 1971). Moreover, if Brown is in fact the informer and the long standing antagonism between the two is demonstrated, the defendant would be free to remark upon these facts in arguing the improbability of his carrying out an illicit transaction with a stranger brought to him by Brown.
On "basic considerations of fairness," therefore, Cashen v. Spann, supra, 66 N.J. at 557, the circumstances go beyond the "close case" presented in State v. Milligan, supra 71 N.J. at 394, and weigh the scales in favor of disclosure.
Turning to the admissibility of testimony by William Harris and Gloria West concerning Brown's extrajudicial statements, we conclude that if Brown was in fact the informer working with Oakley the testimony should be received. The offer was made on the theory of a declaration against interest. Evid. R. 63(10) provides:
A statement is admissible if at the time it was made it was so far contrary to the declarant's pecuniary or proprietary interest or so far subjected him to a civil or criminal liability or so far rendered invalid a claim by him against another or created such a risk of making him an object of hatred, ridicule or social disapproval in the community that a reasonable man in his position would not have made the statement unless he believed it to be true, except that such a statement is not admissible against a defendant other than the declarant in a criminal prosecution.
In State v. Sejuelas, 94 N.J. Super. 576 (App. Div. 1967), defendant offered testimony to the effect that prior *233 to the date of the crime the witness overheard the alleged informer state that he intended to frame this defendant. The offer was rejected. In remanding for a new trial the court held that the statement was made against the declarant's penal interest and should therefore have been admitted. It was also held admissible as a declaration of present intent which was corroborated by the details of the informer's conduct at the scene of the crime.
No less here are Brown's statements, if made, contrary to his interest within the meaning of Evid. R. 63(10). They can be expected to make of him an "object of hatred, ridicule or social disapproval." Furthermore, they clearly evidence a violation of N.J.S.A. 2A:148-22.1 which declares indictable the giving of false information to a law enforcement officer or agency. Also comparable to the facts of Sejuelas are the "indicia of trustworthiness" attaching to the declaration of intent allegedly made to Gloria West. Here the informer, while not observed committing the act with which defendant was charged, as in Sejuelas, is placed at the scene under circumstances consistent with his stated declaration.
Recognizing that the out-of-court declarations attributed to Brown, even if believed by the jury, would not necessarily mandate defendant's acquittal as would the confessions considered in Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), still they were of such clear materiality that their exclusion constituted error.
Finally, we come to defendant's claim of prejudice resulting from the following comments made by the assistant prosecutor in summation:
* * *. Investigator Oakley, I submit to you, had no motive to fabricate, no motive to lie. This is one of many cases Investigator Oakley is involved in, and there is no way he would benefit from lying. There is a lot of harm that could come to him from lying because when he goes up there to testify he puts his hand on one of these and he swears that he's going to tell the truth. The police officer's career would be finished in a minute * * *.
*234 Defendant's objection was sustained in the following language.
Yes. I think you've made your point as to the reason why no one would lie in the case. Punishment I think we should leave out of the case. I'll sustain the objection.
The comments that "There is a lot of harm that could come to him from lying" and "the police officer's career would be finished in a minute" were improper and should not be repeated on the retrial.
Reversed and remanded for a new trial.