743 A.2d 325 (2000)
327 N.J. Super. 276
STATE of New Jersey, Plaintiff-Respondent,
v.
Douglas HAWK, Defendant-Appellant,
Superior Court of New Jersey, Appellate Division.
Submitted December 15, 1999.
Decided January 12, 2000.
*326 Jonathan J. Garbini, for defendant-appellant.
John E. Bergh, Salem County Prosecutor, for plaintiff-respondent (Michelle R. Jeneby, Assistant Prosecutor, designated counsel and on the brief).
Before Judges KING and PAUL G. LEVY.
The opinion of the court was delivered by
PAUL G. LEVY, J.A.D.
Defendant and William Quenzel were indicted for possession of LSD, distribution of LSD and conspiracy to distribute LSD. Quenzel accepted a plea agreement, but defendant proceeded to trial, where he was convicted on all counts and sentenced to a *327 net term of fifteen years imprisonment with five years of parole ineligibility; appropriate statutory fines and penalties were assessed. On appeal, defendant contends:
POINT I THE PROSECUTOR'S MISCONDUCT DURING THE TRIAL BY VOUCHING FOR HER WITNESSES; COMMENTING PERSONALLY ON THE EVIDENCE; AND ARGUING PUBLIC POLICY TO THE JURY DURING CLOSING ARGUMENT AND BY STATING THE DEGREE OF THE CRIME ALLEGED TO HAVE BEEN COMMITTED DURING OPENING DENIED THE DEFENDANT A FAIR TRIAL IN VIOLATION OF THE UNITED STATES AND NEW JERSEY CONSTITUTIONS.
POINT II THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY PERMITTING AN ALLEGED STATEMENT OF THE DEFENDANT INTO EVIDENCE OVER THE OBJECTION OF DEFENSE COUNSEL PURSUANT TO A RULE 104(C) HEARING.
POINT III THE TRIAL COURT FAILED TO GIVE EITHER A STATE V. HAMPTON OR A STATE V. KOCIOLEK CHARGE TO THE JURY, NOTWITHSTANDING THE ADMISSION OF EVIDENCE OF A CUSTODIAL, UNRECORDED STATEMENT DEFENDANT ALLEGEDLY MADE TO THE POLICE.
POINT IV THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO PROVIDE THE JURY A CLAWANS CHARGE AT DEFENDANT'S REQUEST PURSUANT TO STATE V. CLAWANS, 38 N.J. 162, 183 A.2d 77 (1962), BASED ON STATE'S DECISION NOT TO CALL A CO-DEFENDANT WITH WHOM THE STATE PLEA BARGAINED TO TESTIFY AGAINST THE DEFENDANT, AND WHO HAD SUPERIOR KNOWLEDGE OF THE FACTS AS PRESENTED BY ANOTHER STATE'S WITNESS.
POINT V THE COURT ERRED IN ITS CHARGE TO THE JURY ON THE ELEMENTS OF POSSESSION OF A CONTROLLED AND DANGEROUS SUBSTANCE WITH INTENT TO DISTRIBUTE AND CONSPIRACY TO DISTRIBUTE A CONTROLLED AND DANGEROUS SUBSTANCE IN THAT THE COURT DID NOT INSTRUCT THE JURORS WITH RESPECT TO THEIR DUTY TO FIND THE WEIGHT OF THE SUSPECTED SUBSTANCES, REQUIRING REVERSAL.
We disagree with defendant on all but the first contention. We conclude that the prosecutor's comments, which breached the basic restraints against prosecutorial excess, were inappropriate and inflammatory that the trial judge's curative instructions could not undo the harm the comments caused. A new trial is required.

I.
The prosecutor made several inappropriate statements during opening and closing arguments, and the trial judge recognized these and attempted to remedy them by issuing corrective instructions. During opening argument, the prosecutor stated:
Now, when I think about this case what I think about is holding people accountable for their actions. Today the State is asking you to hold Douglas Hawk, the defendant, accountable for his actions.
This request, that the jury hold defendant accountable for his actions, was followed by the prosecutor's admonition that the jury was considering "a first degree case." Defendant objected and sought a mistrial, but the judge denied the motion and gave a curative instruction after the State's opening was completed. The judge told the jury:
Ladies and gentlemen, before I have [defense counsel] give you his opening, I want to instruct you, the Prosecutor *328 made reference to a degree. That is of no relevance to the jury as fact finders and should not be regarded or considered by you in any way. In fact, you will not hear me instruct you on anything like that. At the end of the case, as I've already indicated to you, you'll get my charge as to the elements of the offense, that is what the law is, for each of the offenses, and your job will be to apply the facts as you find them to be in this case to the elements of the law, that is the elements of the offenses that I will instruct you on, not based on the comments of the opening statement.
Thus, the judge recognized the errors made by the prosecutor and took immediate action by attempting to correct those errors and instruct the jury on their role and on what they could consider.
A prosecutor holds a unique position in the legal community in that her primary duty is not to obtain convictions, "but to see that justice is done." State v. Ramseur, 106 N.J. 123, 320, 524 A.2d 188 (1987). Consequently, while a prosecutor must advocate a position vigorously, there are boundaries to such conduct. Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed 1314, 1321 (1935), overruled on other grounds, Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).
The [prosecuting] attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense a servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigorindeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

[Ibid.]
A finding of prosecutorial misconduct does not end a reviewing court's inquiry; in order to merit reversal, the misconduct must have deprived the defendant of a fair trial. In making this assessment, we examine any timely and proper objections made by defendant, whether the remarks were withdrawn and how the trial court dealt with any improper remarks, including issuance of any curative instructions. Ramseur, supra, 106 N.J. at 322-23, 524 A.2d 188.
At this early point of the trial, the judge gave an appropriate instruction to correct any misconceptions the jury might have had. This was proper, and the prosecutor's comments during her opening combined with the judge's instruction did not, on their own, deprive defendant of a fair trial. Id. at 323, 524 A.2d 188.
The prosecutorial role is greater than simple advocacy, it encompasses that of the protector of justice, and the improprieties found during the State's closing argument are very troubling. The prosecutor began:
May it please the Court, [defense counsel], Ladies and Gentlemen of the jury. I just want thank opposing counsel for his wonderful rendition of a story. I would just like to tell you that when I went home last night and thought about how I was going to present the defendant's guilt, I didn't have to think that hard. What presented the defendant's guilt was the evidence and the testimony from both my witnesses. And not only both my witnesses, but also defendant's witnesses. Let me get into why: At the opening of the State's case, I told you that I wanted you to hold somebody, meaning, mainly, Douglas Hawk accountable for his actions that happened on August 29th, 1996.

*329 Now what [message] are you going to send the community if you reach a verdict of guilty? Well, the message that you will send is that this community will not tolerate distributors and sellers of LSD. That's the message you're going to send with your verdict of guilty against Douglas Hawk.
Somewhat later, the prosecutor reminded the jury that:
The State asked you to hold people accountable for their actions. There's two versions. Two verdicts you could give: Guilty or not guilty. Guilty tells Douglas Hawk, you do the crime, you do the time. The second version tells Douglas Hawk or the community, you know what, Carol O'Donnell just wasn't believable and Detective Cummings really didn't prove or testify to anything that we could see as relevant and, you know, maybe the law enforcement officials in Salem County and Cumberland County didn't do their job. That's what the second verdict would tell the community.
Now, the State cannot continue to look the other way when crimes are committed by people of this age, because it encourages other people to commit the same crime when they go unpunished. We have towe must refuse to accept any time there is a crime committed against society. We must refuse to accept any time that there is a dealer, a drug distributor, like Douglas Hawk selling to the Billy Quenzels. These Billy Quenzels are vulnerable, but they're the young youth and there's a lot of youth in this country; my brothers, my sisters, your nieces, your nephews, your children, your grandchildren, your children's children. They're all over the place.
We must come to the conclusion that Douglas Hawk is guilty as charged. That such an individual who engages in any act or drug distribution is demeaning society's values, is demeaning society's ethical obligations, and is demoralizing the Ladies and Gentlemen of this jury because you are all law abiding citizens, so why can't he be.
Today is the day we tell Douglas Hawk, no. No, to what you did on August 29. No, to what you might do in the future, and no, to letting you get away with what you did. I ask you to hold defendant, Douglas Hawk, accountable for his actions, and tell him that he must do time now.
These remarks were inappropriate, inflammatory and constitute misconduct as they convey a personal feeling of the prosecutor not supported by facts and tell the jury that their job is to send a message to the defendant. State v. Rose, 112 N.J. 454, 523, 548 A.2d 1058 (1988). Such statements, uncorrected could mislead a jury as to its role and duty. Ibid.
After the State's argument concluded, defendant objected and again sought a mistrial. The trial judge agreed that the comments were inappropriate, but thought a "strong instruction" was warranted and would suffice to correct the prosecutor's statements. The judge instructed the jury:
You're not here to send anybody a message; not the community, not Mr. Hawk. You are here to evaluate the facts as you've heard them as the judges of the facts and apply it to the law and determine whether the State has met its burden beyond a reasonable doubt with regards to the facts that you've heard in this Courtroom as you apply it to the law as I'm going to give you. Not to send a message to anyone but to evaluate the case and to determine whether the State has proven its case beyond a reasonable doubt with regards to Mr. Hawk's case on any or all of the three charges.
Had this been the only instance of prosecutorial misconduct, the judge's instruction, coming immediately on the heels of the prosecutor's misconduct, might have been sufficient to remedy any inferences that the jurors had any role other than as *330 impartial arbiters of the facts. State v. Hickman, 204 N.J.Super. 409, 412-13, 499 A.2d 231 (App.Div.1985). The type of necessary curative instruction is in the discretion of the trial court judge who is in the best position to decide what is needed. State v. Winter, 96 N.J. 640, 647, 477 A.2d 323 (1984). Here, the prosecutor's statements inferred the personal belief in defendant's guilt without relying on facts in front of the jury. State v. Farrell, 61 N.J. 99, 103, 293 A.2d 176 (1972). Consistent with Farrell, the trial court here signaled out the impropriety and specifically addressed it in the curative instruction. Id. at 107, 293 A.2d 176.
While the proof of defendant's guilt is strong, these types of remarks are particularly onerous and are likely to have a damaging impact. Id. at 106, 293 A.2d 176. Prosecutors may sum up "graphically and forcefully," State v. Johnson, 31 N.J. 489, 510, 158 A.2d 11 (1960), but they may not make comments that a jury must "send a message" to the community and to the defendant. Rose, supra, 112 N.J. at 523, 548 A.2d 1058. The judge took notice of that and of the need for a specific curative instruction directed at the misconduct, and he proceeded to issue a stern rebuke to the prosecutor via the curative instruction. Farrell, supra, 61 N.J. at 107, 293 A.2d 176. However, when combined with the prosecutor's other misconduct, it is likely no instruction would have been sufficient to ensure defendant a fair trial.
Defendant also claims that the prosecutor inappropriately vouched for the State's witnesses. Specifically, defendant argues the prosecutor should not have told the jurors that a not guilty verdict would mean that police officers in Salem and Cumberland Counties were not doing their jobs. The prosecutor was responding to defendant's several attacks on the officers' credibility during the defendant's closing argument, as follows:
... I found that the word canard means an untruth, but to be more blunt, it means a lie. And I would submit to you, Ladies and Gentlemen, that the testimony you heard from Officer O'Donnell was a canard.
...
This is a man, I submit to you, who wanted to get ahead; wanted to be promoted; wanted to be a street police officer, and this was his big time. He was super cop. That's what he wanted to be.
...
There's a difference, Ladies and Gentlemen, between testimony and telling a story. And I would submit to you, Ladies and Gentlemen, that the statements coming out of the mouth of that witness, Mr. O'Donnell, was one heck of a whopper of a fairy tale.... But he wants to portray, and I submit to you, that he is, a super, super duper cop. That he did all this on his own and I'm darn proud of it.
A prosecutor is not forced to idly sit as a defense attorney attacks the credibility of the State's witnesses; a response is permitted. State v. C.H., 264 N.J.Super. 112,135, 624 A.2d 53 (App.Div.), certif. denied, 134 N.J. 479, 634 A.2d 526 (1993). Here the prosecutor countered during closing by stating that an acquittal would mean that "Carl O'Donnell just wasn't believable and Detective Cummings really didn't prove or testify to anything that we could see as relevant and, you know, maybe the law enforcement officials in Salem County and Cumberland County didn't do their job."
While "[g]enerally, remarks by a prosecutor, made in response to remarks by opposing counsel are harmless," C.H.,supra, 264 N.J.Super. at 135, 624 A.2d 53, we must assess statements concerning the credibility of police officers very carefully. State v. Staples, 263 N.J.Super. 602, 605, 623 A.2d 791 (App.Div.1993). A prosecutor may not suggest police officers will suffer penalties if a jury is not convinced by their testimony. Ibid. Comments such as "`[t]here is a lot of harm that could *331 come to him from lying,' and `the police officer's career would be finished in a minute' " if the officer were to lie are inappropriate and could lead to an unfair trial. State v. West, 145 N.J.Super. 226, 234, 367 A.2d 453 (App.Div.1976). This court should not only disallow such comments, but should ensure that prosecutors are not allowed to make inferences which have the same effect on the jury.
Police occupy a position of authority in our communities. Their purpose is to "protect and serve" our citizenry, and thus ordinary citizens are more likely to believe them than a person on trial for distribution of drugs. The prosecutor's comments in the instant case had the effect of telling the jury that, if they did not find defendant guilty, they were saying that all the police in two counties were not doing their job. These comments were not specifically addressed by the court in its curative instruction. Farrell, supra, 61 N.J. at 107, 293 A.2d 176. It is doubtful a curative instruction would have been effective in this situation anyway.
These two instances of prosecutorial misconduct could very easily have confused the jury as to their proper role and could also have very easily led to a conviction based on something other than the evidence. The comments "violated fundamental restraints against prosecutorial excess." Staples, supra, 263 N.J.Super. at 607, 623 A.2d 791. They also had the very real likelihood of denying defendant a fair trial. Therefore, the conviction is reversed and the matter is remanded for retrial. The prosecutor is directed not to repeat any of the improper comments to the jury, both those inappropriately made during opening as well as those in the closing. Ramseur, supra, 106 N.J. at 322, 524 A.2d 188; West, supra, 145 N.J.Super. at 234, 367 A.2d 453.

II.
During pre-trial motions, defense counsel moved to preclude use of an oral, unrecorded statement defendant gave to Detective Cummings after he was arrested. The record reveals no credible evidence that police violated his rights or failed to comply with Miranda or Edwards requirements. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Edwards v. Arizona, 451 U.S. 477, 482, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378, 385 (1981). While a request for an attorney need not be clear or explicit, in this case, defendant invoked his right to attorney in a clear, unequivocal manner and the police understood his request and responded properly. State v. Mallon, 288 N.J.Super. 139, 150, 671 A.2d 1115 (App.Div.), certif. denied, 146 N.J. 497, 683 A.2d 200 (1996). No police officers initiated further conversations with defendant; defendant took it upon himself to state without any prompting (except from his own lawyer) that he wished to cooperate with the investigating officers. This statement by the defendant initiated further conversation with the police about the matter which the police were investigating. State v. Fuller, 118 N.J. 75, 82, 570 A.2d 429 (1990). There was no need for fresh Miranda warnings, as defendant clearly understood his rights and knowingly and voluntarily waived them.
We agree with the trial judge that defendant's statement was admissible under N.J.R.E. 803(c)(25), and it is not precluded under N.J.R.E. 404(b) since it was not evidence of other crimes or wrongdoings offered to attack the credibility of the defendant. The statement was admitted to show that defendant sold drugs to co-defendant. As an additional safeguard, the judge provided the jury a well-crafted limiting instruction to guide its use of the statement, and repeated the instruction at the close of the case. The judge also took care to ensure the jurors understood that they must weigh the credibility of the statement. We conclude that the judge did not abuse his discretion and did not err in admitting defendant's statement.
While we find no error in the jury instructions, contrary to defendant's last *332 three contentions, we need not engage in further analysis in light of the need for a new trial.
Reviewing the record in its entirety convinces us that the jury came to the proper conclusion, given the evidence presented. However, the prosecutor's misconduct was so egregious in denying defendant his right to a fair trial, we have no choice but to reverse the decision and remand for a new trial absent the offending comments.
Reversed and remanded for new trial.