**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3817-17T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

WOO-JIN HWANG,

    Defendant-Appellant.

_____

Submitted November 10, 2020 – Decided November 20, 2020

Before Judges Yannotti and Haas.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 11-02-0367.

Joseph E. Krakora, Public Defender, attorney for appellant (Matthew T. Mierswa, Designated Counsel, on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent (Craig A. Becker, Assistant County Prosecutor, of counsel and on the brief).

PER CURIAM

A Bergen County grand jury charged defendant Woo-Jin Hwang and his co-defendant, Marcello Castillo, in four counts of a five-count indictment with first-degree possession of a controlled dangerous substance (CDS), Methylenedioxymethamphetamine (Ecstasy), with intent to distribute, contrary to N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(1) (count one); third-degree possession of a CDS (marijuana) with intent to distribute, contrary to N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(11) (count two); third-degree possession of a CDS (Ecstasy) with intent to distribute, contrary to N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3) (count three); and second-degree possession of a CDS (Ecstasy) with intent to distribute within 500 feet of a public park, contrary to N.J.S.A. 2C:35-7.1 (count four). Castillo was also charged with fourth-degree unlawful possession of credit cards, contrary to N.J.S.A. 2C:21-6(c)(2) (count five).

Prior to trial, Castillo pled guilty to counts one and two, and agreed to testify against defendant. The trial judge denied defendant's motion to suppress evidence seized from his person and a backpack he was carrying at the time of his arrest.

A-3817-17T2

Following a trial, the jury convicted defendant of counts one, two, and three, and found him not guilty of count four. The judge sentenced defendant to an aggregate sixteen-year prison term.

On direct appeal, this court ruled that the judge erred by denying defendant's motion to suppress, reversed defendant's conviction, and remanded the matter for a new trial. State v. Hwang, No. A-2236-12 (App. Div. Nov. 19, 2015). On remand, the State dismissed counts two and three, which concerned the suppressed evidence.

Following a multi-day trial, the jury convicted defendant of count one, first-degree unlawful possession of a CDS (Ecstasy). The judge sentenced defendant to twelve years in prison, with a six-year period of parole ineligibility. This appeal followed.

On appeal, defendant raises the following contentions:

POINT I

THE ASSISTANT PROSECUTOR'S REPEATED IMPROPER REMARKS DURING SUMMATION UNDULY INFLUENCED THE JURY AND DEPRIVED [DEFENDANT] OF HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL.

POINT II

THE COURT ERRED BY FAILING TO INSTRUCT THE JURY ON "MERE PRESENCE" AS IT

RELATES TO CONSTRUCTIVE POSSESSION. (Not raised below).

After reviewing the record in light of the arguments advanced on appeal, we affirm.

## I.

In September 2010, federal customs agents intercepted two packages from Canada that were addressed to Castillo at a post office box in Ridgewood. The packages contained 990 Ecstasy pills. The Department of Homeland Security reached out to the Bergen County Prosecutor's Office and arranged to make a controlled delivery of the packages to the post office on September 20, 2010.

Castillo testified he owed defendant money and that defendant used this debt as leverage to persuade Castillo to obtain the post office box for defendant's use. Defendant located a post office that would not require Castillo to provide a valid government-issued photo identification and Castillo rented the box.

When defendant and Castillo arrived at the post office, Castillo presented the undercover postal inspector with a "slip" confirming he had received two packages in the box. The agent retrieved the packages from the office and placed them on the counter. Defendant and Castillo had a brief discussion and Castillo told the agent that he no longer wanted the packages. The agent took the packages back to the office.

A-3817-17T2

Defendant and Castillo conferred with each other and then asked to speak to the agent. At that point, defendant asked to see the packages again. The agent retrieved the packages and placed them on the counter. After some further discussion with Castillo, defendant told the agent the packages were Castillo's and they would take them. The agent asked defendant for identification, but he refused to provide it. Castillo signed for the packages and the two men left the post office together. The police arrested them as soon as they got outside.

## II.

In Point I of his brief, defendant argues that the prosecutor's remarks during summation denied him a fair trial. We disagree.

During his closing, the prosecutor three times referred to certain arguments raised by defense counsel as "red herrings." Defense counsel did not object to any of these comments. However, on the third occasion, the trial judge called the attorneys to sidebar and told the prosecutor, "[m]ore than once you've made reference to red herrings. This time you used it toward the defendant." The judge also advised the prosecutor that he had used this term "a couple of times. It wasn't objected to, but this time you crossed the line."

After concluding the sidebar, the judge gave the jury the following curative instruction:

A-3817-17T2

Ladies and gentlemen, I'm going to instruct you as follows. The comment made by [the prosecutor] just a moment ago about falling for a red herring, you are to completely disregard that comment. It's not to enter into your deliberations whatsoever.

I'm going to instruct you further that comments made by counsel in their closing statements [are] not evidence. The only evidence that you are to consider is the evidence from the witness stand, any items admitted into evidence.

Later in his summation, the prosecutor discussed the testimony presented by the State's expert concerning the manner in which the Ecstasy pills had been packaged and, in the course of that discussion, stated:

The third element is that the defendant possessed or had under his control [Ecstasy] with the intent to distribute [over 900] pills. And think about what we heard from Sergeant Perez. What kind of drug it is, who it's marketed to, how it's marketed, [its] value . . . . [Y]ou can look through the bag when you take this in the back. The yellow, they got alien head markings. They're stamped in a way to sell, as he said, to people who are between the ages of [eighteen] and [twenty-five]. That they come in all different shapes, and sizes, and stacks.

This isn't a single dosage. This is multiple doses and each . . . pill is worth 20 to $30. So it's indisputed [sic][1] that it would be possessed with the intent to distribute.

---

[1] Presumably, the prosecutor intended to state it was "undisputed" rather than "indisputed."

A-3817-17T2

Defense counsel objected to the prosecutor's last remark because although the manner in which the pills were packaged was undisputed, the question of whether they were possessed with intent to distribute was not. In response to defendant's objection, the judge immediately gave the jury the following strong, curative instruction:

> Ladies and gentlemen, you are to disregard the last comment that it is indisputed [sic] that the CDS was possessed with the intent to distribute. Okay? It's not to enter into your deliberations whatsoever.
>
> Again, comments made by counsel in their closing statements are not evidence. The evidence that you are to consider is the evidence from the witness stand and the items that were admitted into evidence only.
>
> It is for you to decide. You are the judges of the facts of this case. It is for you to decide whether or not the CDS in this case was possessed with the intent to distribute. So disregard that last remark.

Still later in his closing statement, the prosecutor remarked that Castillo had agreed to "truthfully testify at trial" in return for his plea agreement. He also stated that because Castillo had already served his custodial sentence, the State would be unable to take back the plea if Castillo failed to tell the truth. Defense counsel did not object to this comment.

7

Nevertheless, the judge called both attorneys to sidebar and told the prosecutor that his statement that the State could do nothing to Castillo if he lied on the stand was not accurate because, contrary to the prosecutor's remark, the State could still rescind the plea. The judge then gave the following curative instruction to the jury:

> Ladies and gentlemen. I'm going to instruct you as follows. You are to disregard the comments of the [p]rosecutor with respect to there being no potential consequence to Mr. Castillo if he refused to testify in this case. You're to disregard those comments. They're not to enter into your deliberations whatsoever. Okay?
>
> Again, you're the judge of the facts. The evidence you are to consider is the evidence from the witness stand and the items admitted into evidence.

Prosecutorial misconduct is not a basis for reversal unless the conduct "was so egregious that it deprived [the] defendant of a fair trial." State v. DiFrisco, 137 N.J. 434, 474 (1994). Considerable leeway is afforded to prosecutors in presenting their arguments at trial "as long as their comments are reasonably related to the scope of the evidence presented." State v. Frost, 158 N.J. 76, 82 (1999). Thus, "[i]t is not improper for the prosecution to suggest that the defense's presentation was imbalanced and incomplete." State v.

8

Patterson, 435 N.J. Super. 498, 508 (App. Div. 2014) (quoting State v. Timmendequas, 161 N.J. 515, 593 (1999)).  However, "'[a] prosecutor is not permitted to cast unjustified aspersions' on defense counsel or the defense." Frost, 158 N.J. at 86 (quoting State v. Lockett, 249 N.J. Super. 428, 434 (App. Div. 1991)).

To determine if the alleged misconduct was sufficiently egregious to warrant reversal, the appellate court "must consider 'whether defense counsel made a timely and proper objection, whether the remark was withdrawn promptly, and whether the court ordered the remarks stricken from the record and instructed the jury to disregard them.'"  Patterson, 435 N.J. Super. at 508 (quoting State v. Wakefield, 190 N.J. 397, 438 (2007)).  As a general rule, a remark will not be considered prejudicial if no objection was made.  State v. R.B., 183 N.J. 308, 333 (2005) (quoting Frost, 158 N.J. at 83).  "The failure to object suggests that defense counsel did not believe the remarks were prejudicial at the time they were made.  The failure to object also deprives the court of an opportunity to take curative action."  Ibid. (quoting Frost, 158 N.J. at 84).

In that regard, the trial court can give the jury a curative instruction to remedy any prejudicial effect caused by a prosecutor's improper remark.  State v. Hawk, 327 N.J. Super. 276, 283 (App. Div. 2000).  "The type of necessary

9

curative instruction is in the discretion of the trial court judge who is in the best position to decide what is needed." Ibid. (citing State v. Winter, 96 N.J. 640, 647 (1984)). However, it is well settled that "[a]n effective curative instruction needs to be 'firm, clear, and accomplished without delay.'" State v. Prall, 231 N.J. 567, 586 (2018) (quoting State v. Vallejo, 198 N.J. 122, 134 (2009)).

Applying these standards, we are satisfied that none of the prosecutor's comments deprived defendant of a fair trial. The prosecutor's references to "red herrings" were brief and defense counsel did not object to them. Moreover, these comments were an appropriate attempt to point out "that the defense's presentation was imbalanced or incomplete." Patterson, 435 N.J. Super. at 508. In any event, the judge addressed any possible prejudice with his prompt curative instruction.

The prosecutor did misspeak when he stated that the evidence presented concerning defendant's intent to distribute the Ecstasy pills was "undisputed." Again, however, the judge immediately sustained defense counsel's objection and advised the jury to disregard that comment. Similarly, when the judge believed that the prosecutor had incorrectly told the jury that Castillo could not be punished if he failed to tell the truth at trial, he again gave a strong curative instruction to the jury.

10

A-3817-17T2

In his brief, defendant argues that the judge's curative instructions were "too specific" because he told the jury exactly what remarks they were to disregard, thus repeating what the prosecutor had said in his summation. This argument lacks merit.

Our Supreme "Court has consistently stressed the importance of immediacy and specificity when trial judges provide curative instructions to alleviate potential prejudice to a defendant. . . ." Vallejo, 198 N.J. at 135 (citations omitted). There is a strong presumption that juries follow a judge's instructions. State v. Herbert, 457 N.J. Super. 490, 503 (App. Div. 2019).

Here, the judge's instructions were firm, clear, and accomplished without delay. The judge promptly and properly informed the jury of exactly what they were to disregard and reminded them they were the fact-finders and that statements made by counsel in their closing arguments were not evidence. Therefore, we reject defendant's contentions on this point.

III.

In Point II, defendant argues for the first time that the judge erred by failing to instruct the jury that defendant's mere presence at the post office was insufficient by itself to prove that he constructively possessed the Ecstasy pills. Again, we disagree.

11

It is well settled that "[a]ppropriate and proper charges are essential for a fair trial." State v. Baum, 224 N.J. 147, 158-59 (2016) (alteration in original) (internal quotation marks omitted) (quoting State v. Reddish, 181 N.J. 553, 613 (2004)). Jury instructions must give a "comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find." Id. at 159 (quoting State v. Green, 86 N.J. 281, 287-88 (1981)).

"[I]n reviewing any claim of error relating to a jury charge, the 'charge must be read as a whole in determining whether there was any error. . . .'" State v. Gonzalez, 444 N.J. Super. 62, 70-71 (App. Div. 2016) (quoting State v. Torres, 183 N.J. 554, 564 (2005)). If a defendant does not object to the jury charge at the time it was given, "there is a presumption that the charge was not error and was unlikely to prejudice the defendant's case." State v. Montalvo, 229 N.J. 300, 320 (2017) (quoting State v. Singleton, 211 N.J. 157, 182 (2012)). In addition, if the defendant does not object to the jury charge, the plain error standard is applied and the defendant must demonstrate that any "legal impropriety in the charge prejudicially affect[ed] the substantial rights of the defendant" and was "sufficiently grievous . . . to convince the [reviewing] court

A-3817-17T2

that of itself the error possessed a clear capacity to bring about an unjust result."

Id. at 321 (quoting State v. Chapland, 187 N.J. 275, 289 (2006)).

Applying these principles, we conclude that the trial judge's instruction on constructive possession was clearly not erroneous when viewed as a whole. The judge instructed the jury that possession could be actual or constructive, and either sole or joint. In this portion of the charge, the judge stated:

> Possession means a conscious, knowing possession, either actual or constructive. A person is in actual possession of an item when he first knows what it is, that is, he has knowledge of its character and second, knowingly has it on [his] person at a given time.

> Possession may be constructive instead of actual. As I just stated, a person who with knowledge of its character knowingly has direct physical control over an item in a given time is in actual possession of it. Constructive possession means possession in which the possessor does not physically have the item on his or her person but is aware that the item is present and is able to and has the intention to exercise control over it.

> So, someone who has knowledge of the character of an item and knowingly has both the power and the intention at a given time to exercise control over it, either directly or through another person or persons is then in constructive possession of that item.

> Possession may be sole or joint. If one person alone has actual or constructive possession of an item, possession is sole. If two or more persons share actual

13

or constructive knowing possession of an item, possession is joint.

Shortly after instructing the jury on the elements of possession, the judge also instructed the jurors on "mere presence," stating:

> Mere presence at or near the scene, does not make one a participant in the crime nor does the failure of a spectator to interfere make him a participant in the crime. It is, however, a circumstance to be considered with the other evidence in determining whether he was present as an accomplice. Presence is not in itself conclusive evidence of that fact.
>
> Whether presence—whether presence has any probative value depends upon the total circumstances. To constitute guilt, there must exist a community of purpose and actual participation in the crime committed. While mere presence at the scene of the perpetration of a crime does not render a person a participant in it, proof that one is present at the scene of the commission of the crime without disapproving or opposing it is evidence from which, in connection with other circumstances, it is possible for the jury to infer that he assented thereto, lent his countenance and approval and was thereby aiding the same. It depends upon the totality of the circumstances as those—it depends upon the totality of the circumstances as those circumstances appear from the evidence.

Thus, contrary to defendant's newly minted contention, the judge carefully instructed the jury on the concept of mere presence in the context of the specific charge at issue at the trial, that is, whether defendant possessed the Ecstasy pills

A-3817-17T2

with the intent to distribute them.[2]  Defendant did not object to the jury charge at trial, which lends support to the "presumption that the charge was not error" and did not prejudice his case.  Montalvo, 229 N.J. at 320 (quoting Singleton, 211 N.J. at 182).  Therefore, defendant's contention lacks merit.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2]  As the parties point out in their briefs, the model jury charge on "possession" was amended after defendant's trial to include a mere presence instruction to be used when appropriate.  Model Jury Charges (Criminal), "Possession (N.J.S.A. 2C:2-1)" (rev. Jun. 11, 2018).  Both parties agree that the trial "court could not have been expected to provide the jury with an instruction that had not yet been officially incorporated into the Model Charge. . . ."  Having reviewed the new model charge, however, we are satisfied that taken as a whole, the judge's instruction to the jury in this case covered all the information set forth in the revised charge.

A-3817-17T2