**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0315-24

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DANDEL M. GRIMSLEY,
a/k/a MARQUIS DAVIS,

     Defendant-Appellant.

_____

Submitted February 23, 2026 – Decided March 26, 2026

Before Judges Natali and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 19-06-1661 and 19-06-1662.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Rebecca Van Voorhees, Assistant Deputy Public Defender, of counsel and on the briefs).

Theodore N. Stephens II, Essex County Prosecutor, attorney for respondent (Shep A. Gerszberg, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

After a six-day trial, a jury convicted defendant Dandel M. Grimsley of multiple criminal offenses including conspiracy to commit robbery, N.J.S.A. 2C:5-2; three counts of first-degree robbery, N.J.S.A. 2C:15-1; aggravated assault, N.J.S.A. 2C:12-1(b)(6); receiving stolen property, N.J.S.A. 2C:20-7(a); unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); possession of hollow nose bullets, N.J.S.A. 2C:39-3(f); eluding, N.J.S.A. 2C:29-2(b); and possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a). The charges resulting in these convictions stemmed from a series of armed robberies and high-speed pursuits by law enforcement. Defendant challenges his convictions, alleging prosecutorial misconduct during summations, erroneous jury instructions on flight, and the cumulative effect of these alleged errors require a new trial. We affirm.

I.

The facts and procedural history that follow are derived from the trial record. On July 19, 2018, at approximately 11:30 p.m., Acqwel Kendal-Davis was attempting to park near her residence in Newark, when a white van reversed into her, hitting her car and pinning her in. Thereafter, a man exited from the passenger side of the van, approached her while pointing a black handgun at her, and ordered her to hand over money and to exit her vehicle. She could not see

2

the man's face because it was covered by a black and white bandana, but she described him as a Black man, approximately in his forties, with an average build. The man ultimately searched the front passenger compartment of her vehicle, took her cellphone, and drove off. Kendal-Davis then called the police from her partner's cellphone and was able to provide a partial license plate of "8EKE" from the van.

Approximately five minutes later, at approximately 11:35 p.m., Cristie Choice was leaving her friend's house on Poe Street in Newark and while entering her car a white van approached her. A male passenger from the van exited with a gun and struck her on the knee. She described the man as wearing a red and white bandana covering just below his eyelids down his face wearing a dark shirt. She described the driver as a Black man wearing a black and white bandana also covering his face. She recalled the passenger placing a gun to her chest and demanding money. She reached into her pocket and handed the man twenty dollars. Afterwards, the man insisted she had more, reached into her blouse, took additional money, her debit card, and her keys. When police responded and arrived at the scene, they discovered her keys down the block.

During cross-examination, Choice described the white van as "U-Haul" displayed on it. On redirect, she clarified she was not positive the van had "U-

3

Haul" written on it but only believed it did. Police investigations into the incidents revealed an abandoned and disabled white Ford Econoline van, bearing registration "8EKE40" at Norwood Place and Halstead Street. The van had body damage on the driver's side, consistent with Kendal-Davis' report. Further, at this same location a white Ford Econoline van was stolen with Bethlehem Judah Church decals and New Jersey registration "L58AKM."

A little over one hour after the first two robberies, at approximately 1:00 a.m., Luis Baez testified he was working as a cook in a food truck when he observed a "church bus" arrive. Baez clarified the "church bus" was not as big as a New Jersey Transit or school bus, but similar to a Ford van. He recalled a man exiting the passenger side of the church bus and putting a gun to his chest. Baez was unable to describe the features of the man because he was wearing a "handkerchief." As the man held the gun to Baez's chest, he took Baez's wallet and threw his phone to the ground. After taking Baez's belongings, the man got into the passenger side of the van and left. As the van was driving away, Baez took a picture of the license plate on his phone. Baez's picture revealed the license plate of the van matched the Bethlehem Judah Church van that was stolen.

A-0315-24

Approximately thirty minutes after Baez was robbed, at around 1:36 a.m., Maplewood Police Officer William Isetts was on patrol when he observed a Ford Econoline moving about five blocks away from him. At some point earlier, he was notified by central dispatch about numerous armed robberies in Newark, the last one with a Ford Econoline with the registration "L58AKM." Officer Isetts then reached the vehicle and noticed that the license plate of the van matched the description given by central dispatch and recalled the van had markings on it that indicated it belonged to a church. While monitoring the van, he advised central dispatch of his location, called for backup, and attempted to conduct a felony motor vehicle stop. When Officer Isetts activated his lights and sirens, he stated the van "took off at a high rate of speed" and he engaged in motor vehicle pursuit. During the pursuit, Officer Isetts recalled the van was driving extremely recklessly, trying to elude him at "any and all costs." The pursuit concluded when the van collided with a New Jersey Transit bus.

When officers approached the van, they found defendant in the driver's seat and a man identified as Matin Malik in the passenger seat. Nicolas Santorella, a patrol officer for the Essex County Sheriff's Office, entered the van through the rear door, which was already broken, approached the front of the van, and observed a firearm on the driver's lap. Additionally, a "black and red

5

cloth," was found on defendant's person described as a "face covering of some sort." The officer testified "[i]t goes over your head and covers everything except for your eyes so you can see out and conceal your face." Further, a Santander Bank debit card was recovered with Choice's name on it.

Newark Police Detective Sergeant Willmorgs Velasquez was assigned to the robbery investigation. Sergeant Velasquez searched the church van that had been impounded. During the search, he discovered a red bag on the front passenger's floorboard which contained a firearm with a defaced serial number, 9mm hollow-point bullets, and a black and white bandana.

In June 2019, a grand jury returned two indictments charging defendant with second degree conspiracy to commit robbery; three counts of first-degree robbery; eight counts of second-degree aggravated assault; third-degree receiving stolen property; two counts of second-degree unlawful possession of a weapon; fourth-degree possession of hollow nose bullets; fourth-degree possession of a defaced firearm, N.J.S.A. 2C:39-3(d); third-degree possession of a stolen weapon; second-degree eluding; two counts of second-degree possession of a weapon for an unlawful purpose; and first-degree certain persons to not have a gun, N.J.S.A. 2C:39-5(j).

6

The jury found defendant guilty of conspiracy, all three robbery counts, four counts of aggravated assault, receiving stolen property, both counts of unlawful gun possession, possession of hollow nose bullets, eluding, and both counts of possession of a weapon for an unlawful purpose.[1]   After the jury returned its verdict, defendant pled guilty to second-degree certain persons not to have a weapon contained in the second indictment.  On September 20, 2024, the court sentenced defendant to an aggregate twenty-year term of imprisonment on the first indictment, with eighty-five percent parole ineligibility under the No Early Release Act, N.J.S.A. 2C:43-7.2.   The trial court sentenced defendant to a five-year prison term on the certain persons conviction running concurrently with his sentence on the first indictment.

Defendant raises the following points for the first time on appeal:

POINT I

MR. GRIMSLEY WAS DENIED DUE PROCESS AND A FAIR TRIAL WHEN THE PROSECUTOR REPEATEDLY IMPLIED THAT MR. GRIMSLEY WAS A CAREER CRIMINAL AND INAPPROPRIATELY VOUCHED FOR THE INVESTIGATING POLICE OFFICER'S CREDIBILITY.

---

[1]   Four aggravated assault counts, possession of a defaced firearm, and possession of a stolen weapon were dismissed by the State.

A. IT WAS PROSECUTORIAL MISCONDUCT TO REPEATEDLY SUGGEST TO THE JURY THAT MR. GRIMSLEY WAS AN EXPERIENCED CRIMINAL.

B. IT WAS PROSECUTORIAL MISCONDUCT TO VOUCH FOR THE CREDIBILITY OF A KEY POLICE WITNESS.

C. THE MISCONDUCT WAS PLAIN ERROR NECESSITATING A NEW TRIAL.

POINT II

MR. GRIMSLEY WAS DENIED DUE PROCESS AND A FAIR TRIAL WHEN THE TRIAL COURT READ THE JURY THE WRONG MODEL INSTRUCTION ON FLIGHT.

POINT III

THE CUMULATIVE EFFECT OF THE ERRORS REQUIRES REVERSAL.

II.

We review an issue not preserved for appeal at the trial court level for plain error. R. 2:10-2. This court "must disregard any unchallenged errors or omissions unless they are 'clearly capable of producing an unjust result.'" State v. Santamaria, 236 N.J. 390, 404 (2019) (quoting R. 2:10-2). "Plain error is a high bar and constitutes 'error not properly preserved for appeal but of a magnitude dictating appellate consideration.'" Ibid. (quoting State v. Bueso, 225 N.J. 193, 202 (2016)). The plain error's "high standard" "provides a strong

incentive for counsel to interpose a timely objection, enabling the trial court to forestall or correct a potential error." Ibid. (quoting Bueso, 225 N.J. at 203).

A.

We initially address defendant's contention that during summation, the prosecutor committed misconduct by repeatedly suggesting to the jury that defendant was an experienced career criminal and by vouching for a key investigating police officer's credibility by stating that the officer had no motive to lie and would face special consequences if he did.

Defendant specifically points to the prosecutor stating: "It's [defendant's] and Mr. Malik's MO. It's what they do. It's what they were doing that night." Defendant asserts that prosecutor's statement is an example of exactly what our Supreme Court condemned in State v. Pennington, 119 N.J. 547 (1990). "The prosecutor implied that defendant had committed other robberies." Id. at 572. Defendant further argues that the impact of this error was compounded by the prosecutor's repeated suggestion that defendant was knowledgeable and experienced in the criminal justice system when stating:

> [Defendant's] date of birth is March 30, 1974. A grown man, right. This wasn't a kid who was in a stolen car and sees some lights and he's never been pulled over and gets spooked and goes on a several minutes long high-speed car chase, running stop signs and red lights . . . up the wrong way on a one way, going through

9

intersections with cars coming, crashing into a bus, hurting several people, right. This is a guy who knew that he did something serious and if he got caught, there were going to be serious consequences, right. This guy was running for his life. <u>This wasn't someone who just has never been there before, a child -- a 19-year-old, 18-year-old, doesn't know what he's doing, gets scared and starts running away, right, if it was just a stolen car.</u>

[(Emphasis added).]

Moreover, defendant also points to the prosecutor's statements that "[t]hese people knew we've got to get rid of this stuff. We can't hold onto it too long" and "these are people who understand that they should be trying to get rid of the evidence" when throwing items out of the van. Defendant asserts these statements were suggestions of criminal history and claiming they were extremely prejudicial because of the risk of the jury using them for propensity purposes in violation of N.J.R.E. 404(b). Defendant contends that the prosecutor's summation was "because it was defendant's 'MO' to commit robberies, he must be guilty of these robberies" serving no other purpose other than propensity.

Further, defendant contends the prejudice surrounding these statements was great because the other evidence connecting him to the three robberies was "far from overwhelming." He points out that (1) none of the victims could identify their assailant because of face covering, (2) there is conflicting

testimony as to the descriptions of the vans involved in the robberies, and (3) there was no photo or video evidence capturing the robberies. He additionally highlights (1) the police never searched GPS data on his phone, (2) one of the vans described was never searched for evidence, and (3) absent repeated arguments that he was an experienced criminal by the prosecutor, the jury could have found the State did not prove their case.

It has long been held that "prosecutorial misconduct is not grounds for reversal of a criminal conviction unless the conduct was so egregious as to deprive [the] defendant of a fair trial." State v. Timmendequas, 161 N.J. 515, 575 (1999). "Every prosecutorial misstep [in summation] will not warrant a new trial." State v. R.A.M., 482 N.J. Super. 439, 453 (App. Div. 2025) (alteration in original) (quoting State v. Garcia, 245 N.J. 412, 436 (2021)). "Prosecutors are afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented." Id. at 452 (quoting State v. Clark, 251 N.J. 266, 289-90 (2022)).

"In determining whether a prosecutor's misconduct was sufficiently egregious, an appellate court must take into account the tenor of the trial and degree of responsiveness of both counsel and the court to improprieties when they occurred." State v. R.B., 183 N.J. 308, 332-33 (2005). Reviewing courts

specifically consider: "(1) whether defense counsel made timely and proper objections to the improper remarks; (2) whether the remarks were withdrawn promptly; and (3) whether the court ordered the remarks stricken from the record and instructed the jury to disregard them." Id. at 333 (quoting State v. Frost, 158 N.J. 76, 83 (1999)). "If defense counsel fails to object contemporaneously to the prosecutor's comments, 'the reviewing court may infer that counsel did not consider the remarks to be inappropriate.'" Clark, 251 N.J. at 290 (quoting State v. Vasquez, 265 N.J. Super. 528, 560 (App. Div. 1993)).

After our review of the record, we conclude that defendant's claims of prosecutorial misconduct lack merit and do not satisfy the plain error standard. We are not persuaded by defendant's argument that the prosecutor engaged in statements that attempted to suggest past criminal history or make a propensity argument in violation of N.J.R.E. 404(b). Statements defendant points to including, "[i]t's their MO. It's what they do. It's what they were doing that night," and "[t]hese people knew we've got to get rid of this stuff. We can't hold onto it too long," and "these are people who understand that they should be trying to get rid of the evidence," when read in context, were limited to the robberies that occurred that night and not to any past criminal history. The evidence at trial established that the three robberies occurred within hours of

A-0315-24

each other and involved the assailants discarding stolen items in vicinity of the area where the robbery occurred. Therefore, the prosecutor's comments were not improper when read in the context of the record showing three separate robberies that night.

We next turn to the prosecutor's statement that "[t]his wasn't someone who just has never been there before, a child – a 19-year-old, 18-year-old, doesn't know what he's doing, gets scared and starts running away." After our review of the entire trial record, we conclude this statement appropriately addresses the severity and extent of defendant's flight from law enforcement. Body camera footage presented at trial documented a pursuit that was close to ten minutes in length and involved a high-speed chase which concluded by the defendants colliding with a bus. We conclude that when reading this statement in context to the evidence, the prosecutor was arguing the flight by defendant, an adult who should understand the gravity of such, was not excusable unlike a teenager that may panic and flee. We conclude this statement was relevant to the evidence at trial related to defendant's eluding charges and was not capable of producing an unjust result satisfying the plain error standard.

Lastly, defendant argues a new trial is warranted because the prosecutor improperly vouched for a key witness's credibility by stating:

[L]et's go over Sergeant Velasquez . . . [h]e's 24 years on the job. The guy's going to retire soon and get a pension. Is he really the kind of guy who's going to start fabricating things, jeopardizing his career? No. . . .

This black and white handkerchief, which, by the way, Velasquez found [] when they were processing the church van. [] He told you who took the photos. It was . . . one of the crime scene guys, right. So this isn't like a rogue officer who's . . . trying to plant things. You've got another guy too who's taking the photos. So now . . . if this is really some conspiracy, [] you got multiple people in on it, right[?] Jeopardizing their careers? to do with that.

[(Emphasis added).]

We note that a prosecutor is entitled to respond to defense counsel's credibility arguments. See State v. Bradshaw, 392 N.J. Super. 425, 437 (App. Div. 2007). "A prosecutor is not forced to idly sit as a defense attorney attacks the credibility of the State's witnesses; a response is permitted." State v. Hawk, 327 N.J. Super. 276, 284 (App. Div. 2000); see also State v. Engel, 249 N.J. Super. 336, 379 (App. Div. 1991) (explaining a prosecutor may respond in summation to defense counsel's insinuation that the State's witnesses had lied and framed defendant).

Accordingly, the statements by the prosecutor were in response to themes articulated by defense counsel at trial at in summations. As we stated in Engel,

14

"[w]hile we do not endorse the prosecutor's allusion [that] his investigators . . . would not 'jeopardize their careers' . . . the issue is not the State's license to make improper arguments, but whether the prosecutor's invited response, taken in context, unfairly prejudiced defendants." 249 N.J. Super at 379. Here, we conclude in the context of the evidence adduced at trial and the defendant's arguments, the prosecutor's statements did not unfairly prejudice defendant nor did they not rise to the level of plain error.

B.

Defendant next contends he was denied due process and a fair trial when the trial court utilized the wrong jury instruction on flight. He asserts he argued he evaded police, not because he committed any armed robberies, but because he was driving a stolen van. Therefore, defendant claims the court improperly instructed the jury that defendant "denied" he fled, instead of his alternative explanation for flight. After reviewing the record, we conclude defendant's contention lacks merit and does not rise to the level of plain error.

When a defendant fails to object to a given jury charge, review is under the plain-error standard. State v. Singleton, 211 N.J. 157, 182 (2012). Plain error applied to a jury instruction "requires demonstration of 'legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and

sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result.'" State v. Chapland, 187 N.J. 275, 289 (2006) (quoting State v. Hock, 54 N.J. 526, 538 (1969)).

The alleged error "must be considered in light of the entire charge and must be evaluated in light 'of the overall strength of the State's case.'" State v. Walker, 203 N.J. 73, 90 (2010) (quoting Chapland, 187 N.J. at 289). "If the defendant does not object to the charge at the time it is given, there is a presumption that the charge was not error and was unlikely to prejudice the defendant's case." Singleton, 211 N.J. at 182.

However, "[a]ppropriate and proper charges are essential to a fair trial." State v. Reddish, 181 N.J. 553, 613 (2004) (quoting State v. Green, 86 N.J. 281, 287 (1994)). Therefore, "erroneous instructions on material points are presumed to be reversible error." State v. Martin, 119 N.J. 2, 15 (1990).

The pertinent excerpt of the trial record of the exchange between the parties and the court regarding the flight jury charge follows.

> DEFENSE COUNSEL: Okay. About the flight charge, obviously, the second part does not apply but –

THE COURT: Well, yeah. I think it's the -- where we start at ["]or["], in bold.[2]

DEFENSE COUNSEL: Yes.

THE COURT: That comes out, . . . ["]set forth the explanation by the defense["], and then the first sentence on the following page, page 2, also comes out.

DEFENSE COUNSEL: Yes, agreed.

THE COURT: I think then it picks up at ["]if, after a consideration of all the evidence["] -- that's sort of the wrap-up of it. That remains.

DEFENSE COUNSEL: Yes.

THE COURT: Do you agree?

DEFENSE COUNSEL: Yes.

---

[2] The full portion of the missing flight charge argued by defendant states:

> There has been some testimony in the case from which you may infer that the defendant fled shortly after the alleged commission of the crime. The defense has suggested the following explanation:
>
> (SET FORTH EXPLANATION SUGGESTED BY DEFENSE)
>
> If you find the defendant's explanation credible, you should not draw any inference of the defendant's consciousness of guilt from the defendant's departure.
>
> Model Jury Charges (Criminal), "Flight" (rev. May 10, 2010).

A-0315-24

THE COURT: All right. Okay. Mr. [Prosecutor], did you have any additional –

PROSECUTOR: No, Judge . . . .

We determine this exchange demonstrates that defense counsel was aware of, and consented to, the deletion of the "explanation" portion of the flight charge and the form of charge that was presented to the jury. Further, defense counsel did not object to the court's instruction during the charge conference or while it was being read to the jury. Although defendant asserts his counsel submitted an alternative motive for flight, the record reflects this "alternative explanation" was provided during summation and was not requested to be included in the jury charge. In addition, no direct evidence was adduced at trial supporting defendant's argument on appeal that he was fleeing because he stole the vehicle rather than the robberies.

Further, as the record reveals, the court instructed the jury that "[a]rguments, statements, remarks, openings and summations of counsel are not evidence and must not be treated as evidence." Model Jury Charge (Criminal), "Final Charge" (rev. Sept. 1, 2022). Based on the foregoing, we conclude the trial court did not provide the jury with an erroneous jury instruction on flight because defense counsel consented to the charge and did not provide the "explanation" as required in the charge nor was any direct evidence offered at

18

trial to factually support the charge defendant claims should have been included. Here, defendant did not overcome the presumption of correctness to the charge provided by the court nor was the instruction plain error because we conclude it did not have a clear capacity to bring about an unjust result, especially since defense counsel argued the explanation in her summation.

Turning to the defendant's argument of cumulative error, because we have determined there was no prosecutorial misconduct nor was the court's jury instruction on flight erroneous, we conclude the cumulative effect surrounding defendant's contention of prejudicial error lacks merit and were insufficient to satisfy the plain error standard.

To the extent we have not addressed any of defendant's remaining arguments, we conclude those arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

19